MORGAN, LEWIS & BOCKIUS LLP
Joseph Duffy
300 S. Grand Ave., 22nd Floor
Los Angeles, CA 90071
Tel: 213-612-2500
Fax: 213-612-2501
joseph.duffy@morganlewis.com
CA State Bar No. 241854

Stephen E. Fitzgerald (to be admitted *pro hac vice*)
1717 Main Street, Suite 3200
Dallas, TX 75201
Tel: 214-466-4000
Fax: 214-466-4001
stephen.fitzgerald@morganlewis.com

*Attorneys for Defendant Exxon Mobil Corporation*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>Plaintiffs,<br><br>vs.<br><br>EXXON MOBIL CORPORATION; E.I. DUPONT DE NEMOURS AND COMPANY, INC.; CHEVRON U.S.A., INC.; CHEVRON ORONITE COMPANY LLC; SHELL OIL COMPANY; PACIFIC GAS AND ELECTRIC COMPANY; PROLOGIS, INC.; FMC CORPORATION; UNION PACIFIC RAILROAD COMPANY; UNITED STATES STEEL CORPORATION; INTERNATIONAL BUSINESS MACHINES CORPORATION; and BAYER CROPSCIENCE, INC.,<br><br>Defendants. | No. 2:21-cv-1739-KJM-JDP<br><br>**DEFENDANT EXXON MOBIL CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: May 6, 2022<br>Time: 10:00 a.m.<br>Judge: Hon. Kimberly J. Mueller |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 6, 2022, or at the nearest available date at which counsel may be heard, in Courtroom 2, 15th floor of the above referenced court located at 501 I Street, Sacramento, CA 95814—or by remote hearing technology if the Court so instructs—Defendant Exxon Mobil Corporation will and hereby does, present for hearing to this Court this Motion to Dismiss (the "Motion").  The Motion seeks dismissal of the complaint brought by Plaintiffs California Department of Toxic Substantives Control and the Toxic Substances Control Account for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  The Motion is based on the accompanying memorandum of law, all pleadings and papers in this action, and such additional papers and arguments as may be presented on in connection with the hearing**.**  The undersigned certify that the Attorney General has waived the meet and confer requirement with respect to this motion.

Dated: March 14, 2022                                    MORGAN, LEWIS & BOCKIUS LLP

*/s/ Joseph Duffy*
Joseph Duffy
Stephen E. Fitzgerald (to be admitted *pro hac vice*)
Attorneys for Defendant
Exxon Mobil Corporation

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Exxon Mobil Corporation ("Exxon"), through undersigned counsel, respectfully submits this Motion to Dismiss the Complaint of Plaintiffs California Department of Toxic Substances Control ("DTSC") and the Toxic Substances Control Account (collectively, "Plaintiffs").

## I.     INTRODUCTION

Plaintiffs' scattershot naming of multiple defendant entities fails to provide any facts, as distinct from legal conclusions and formulaic recitations of the claims' elements, as to why or how Exxon is potentially liable for the hazardous substances purportedly present at the Panoche landfill. For three reasons, the absence of well-pled facts dooms the Complaint under *Twombly-Iqbal* and the petroleum exclusion in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  ***First***, Plaintiffs' have pled no facts that would show Exxon arranged for the disposal of hazardous substances at the landfill.  ***Second***, Plaintiffs' have pled no facts to support their conclusory allegation that there was a release or threatened release of hazardous substances from the landfill.  ***Finally***, Plaintiffs' claims are barred by CERCLA's "petroleum exclusion" to the extent Plaintiffs base their claims on "petroleum refining sludges" and certain fractional petroleum compounds. For these reasons, the Court should grant Exxon's motion to dismiss.

## II.    STATEMENT OF FACTS & PROCEDURAL HISTORY

Panoche landfill ("Panoche") is "a closed hazardous waste treatment and disposal landfill located in Solano County, California." Dkt. 1 ¶ 1. "Panoche consists of approximately 500 acres" and "was a Class I hazardous waste management facility from 1968 to 1986." *Id.* ¶¶ 22-23. "During the period Panoche operated as a Class I hazardous waste treatment and disposal landfill, it received and disposed of more than 550,000 tons of waste," allegedly including "caustic and acidic liquids and solids; petroleum refining sludges; catalysts; hydrogen sulfide abatement sludges; oily slurries; truck washout debris; inorganic precipitates; contaminated soils; organic sludges; shredded currency; and paint pigment sludges." *Id.* ¶ 24.  "After Panoche ceased accepting hazardous substances for treatment, storage, and disposal, the IT Corporation undertook formal closure activities and, on March 27, 2003, Panoche received closure certification." *Id.* ¶ 25.

In 2002, after the title of Panoche was transferred to IT Lake Herman Road, LLC, IT Corporation "filed for bankruptcy protection and, on May 1, 2004, the 'IT Environmental Liquidating Trust' ('ITELT') was established to oversee the long-term post closure operation, maintenance, and upkeep of Panoche as part of the conclusion of the bankruptcy proceedings. Also on May 1, 2004, ITELT became the operator of Panoche." *Id.* ¶¶ 27-28. "On February 29, 2016, DTSC determined that ITELT was in violation of the postclosure requirements, in that the amount determined necessary for the purpose of demonstrating adequate financial assurances for completion of the postclosure activities was underfunded by an amount no less than $7,501,025.75." *Id.* ¶ 30. After determining that ITELT's "shortfall in financial assurances for postclosure activities" was actually "$25,346,588, based upon the 30-year financial assurance period," on July 28, 2016, DTSC determined "that ITELT would not be able to meet the financial assurance obligations for continued maintenance of the closed units." *Id.* ¶ 32. "On November 29, 2016, DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order," ("ISE Order") which it subsequently amended, to address purported "threatened releases of hazardous substances if Panoche is not properly managed when existing funds are depleted, and a permanent remedy has not been implemented." *Id.* ¶ 33. This order purportedly named ITELT and all defendants or their affiliates as respondents required to perform work. *Id.*

On September 24, 2021, Plaintiffs initiated this action by filing their Complaint under section "107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ('CERCLA'), 42 U.S.C. § 9607(a), for the recovery of unreimbursed response costs that Plaintiffs have [allegedly] incurred" and under "section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), for a declaratory judgment that each Defendant is jointly and severally liable to Plaintiffs for the response costs Plaintiffs have incurred, and for any further response costs Plaintiffs incur in the future." *Id.* ¶¶ 1-2. Plaintiffs allege in a conclusory fashion, that Exxon "'arranged for disposal or treatment of hazardous substances,' as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Panoche." *Id.* ¶ 8.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) should be granted where the complaint fails to allege facts sufficient to establish each element of the claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss, the complaint's allegations must rise above the "speculative," "conceivable," or "possible," and instead must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 545, 547, 555, 563, 570; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"). A "'formulaic recitation of the elements of a cause of action will not do.'" *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting *Twombly*, 550 U.S. at 555); *see also Jordan v. Bank of Am., N.A.,*, 396 F. Supp. 3d 922, 928 (E.D. Cal. 2019) ("A complaint must include something more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation' or 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" (citation omitted)) (Mueller, J.).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted) (reversing denial of motion to dismiss). Thus, although well-pleaded allegations of fact are accepted as true, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not. *Iqbal*, 556 U.S. at 678.

## IV. THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO SUPPORT A PRIMA FACIE CASE OF ARRANGER LIABILITY

The Complaint fails because its conclusory allegations do not plausibly show Exxon arranged for disposal of hazardous substances or that there was a release or threatened release of hazardous substances. To plead a prima facie case for CERCLA cost recovery, a complaint must allege in a non-conclusory fashion that "(1) the site on which the hazardous substances are contained is a 'facility' under CERCLA's definition of that term, (2) a 'release' or 'threatened release' of any 'hazardous substance' from the facility has occurred, (3) such 'release' or

'threatened release' has caused the plaintiff to incur response costs that were 'necessary' and 'consistent with the national contingency plan,' and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a)." *See Woodyard, LLC v. Syar Indus., Inc.*, No. 2:19-cv-2495, 2020 WL 4901618, at *3 (E.D. Cal. Aug. 20, 2020) (quoting *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1358 (9th Cir. 1990)) (granting motion to dismiss arranger claim) (Mueller, J.). Plaintiffs' Complaint does not allege facts to support the second and fourth elements.

### A. THE COMPLAINT DOES NOT PLAUSIBLY PLEAD EXXON WAS AN ARRANGER

Regarding the fourth element, Plaintiffs do not plausibly allege Exxon "by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances." *See* 42 U.S.C. § 9607(a)(3). To plead this element, an arranger liability "claim must provide more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *See Wells Fargo Bank, N.A. v. Renz*, No. 08-cv-2561, 2011 WL 97649, at *4 (N.D. Cal. Jan. 12, 2011) (citation omitted) (granting motion to dismiss arranger claim). Despite this well-established standard, Plaintiffs allege in a conclusory fashion, that "Exxon 'arranged for disposal or treatment . . . of hazardous substances,' as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Panoche." *See* Dkt. 1 ¶ 8 (alteration in original). This is the very definition of a formulaic recitation of an arranger claim, and the Court should dismiss it for this reason alone.

Plaintiffs fail on the fourth element for the additional reason that they have not alleged that Exxon "had the intent to dispose of a hazardous substance." *Woodyard*, 2020 WL 4901618, at *4 (citing *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009) (dismissing arranger claim because plaintiff "has not pleaded defendant intended to dump concrete 'washout,' which contains the hazardous substance at issue"). Since the Supreme Court decided *Burlington Northern*, courts require plaintiffs to plead "intent" when bringing an arranger claim. *See Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, No. 11-cv-1597, 2012 WL 832879, at *9 (N.D. Cal. Mar. 12, 2012) (stating that an "entity must *intend* that product be disposed of during transfer

4

No. 2:21-cv-1739-KJM-JDP
EXXON MOBIL CORPORATION'S
MOTION TO DISMISS

process" and dismissing claim because "there are no facts pled showing that the District 'arranged' for the disposal or treatment of hazardous substances, as required under CERCLA § 107(a)(3)" (citing *Burlington N.*, 556 U.S. at 611-12)); *Wells Fargo*, 2011 WL 97649, at *4 (dismissing arranger claims because "Plaintiff and Umstead fail to allege any facts that could establish that Hoyt intentionally planned for any disposal of PCE"); *KFD Enters., Inc. v. City of Eureka*, No. 08-cv-4571, 2010 WL 4703887, at *6 (N.D. Cal. Nov. 12, 2010) ("Nor does the TACC contain any allegation that ERI took 'intentional steps to dispose of,' let alone treat, a hazardous substance." (citing *Burlington N.*, 556 U.S. at 611)). There are no allegations of intent, and thus, the arranger claim fails.

### B. THE COMPLAINT DOES NOT PLAUSIBLY PLEAD THERE WAS A RELEASE OR THREATENED RELEASE

Even if Plaintiffs could plead facts showing Exxon was an "arranger," the Complaint still fails on the second element because it lacks non-conclusory facts regarding the purported "release or threatened release" of hazardous substances. "While Plaintiffs 'need not allege the precise manner of the release,' they must at least allege some 'time frame for when the releases occurred.'" *Alisu Invs., Ltd. v. TriMas Corp.*, No. 16-cv-686, 2018 WL 6017008, at *5 (C.D. Cal. Apr. 4, 2018) (dismissing CERCLA claim because "something more than a bare allegation" of a release "at some unspecified time is required"); *see also Coppola v. Smith*, 935 F. Supp. 2d 993, 1009 (E.D. Cal. 2013) ("At the pleading stage, a time frame need not be alleged with pinpoint precision, but a general time frame, to the best of Coppola's ability, should be included. . . . For these reasons, the second element is inadequately pled."). The Complaint merely alleges Panoche operated from 1968-86, formally closed in 2003, and has since undergone certain "postclosure operations." *See* Dkt. 1 ¶¶ 23, 25-26. The allegation regarding purported releases, however, is wholly conclusory, as Plaintiffs do not allege when during the past fifty-four years these releases allegedly occurred. *See id.* ¶ 34 ("There have been 'releases' of hazardous substances from Panoche, as defined in section 101(22) of CERCLA, 42 U.S.C. § 9601(22) . . . ."). It is not enough for Plaintiffs simply to identify the purported start date of operations at the landfill. In *Alisu*, the plaintiffs alleged operations began in 1986, but the Court held that "Plaintiffs must at least generally allege when

and how, over the course of the past 32 years, PCE has been released on or from the Luppen Property." *Alisu*, 2018 WL 6017008, at *5. Because there are no allegations "when and how" hazardous substances have been released from Panoche, the Complaint fails.

The Complaint also lacks non-conclusory allegations which, if accepted as true, would indicate there has been a "threatened release" of hazardous substances from Panoche. Like most of its allegations, Plaintiffs' assertion that "[f]urther releases of hazardous substances from Panoche threaten to result" is wholly conclusory. *See* Dkt. 1 ¶ 34. In fact, Plaintiffs' "threatened release" allegations are contingent on events that may or may not occur years down the line, as DTSC issued its ISE Order "to address threatened releases of hazardous substances *if* Panoche is not properly managed *when existing funds are depleted, and a permanent remedy has not been implemented*." *Id.* ¶ 33 (emphasis added). This is a far cry from the "concrete" or "current threat of a release" that is required to allege this element. *See Powell Duffryn Terminals, Inc. v. CJR Processing, Inc.*, 808 F. Supp. 652, 656 (N.D. Ill. 1992) (requiring "concrete threat of release" and dismissing complaint because there was no allegation "hazardous substances would soon be released into the environment"); *Allied Towing Corp. v. Great E. Petroleum Corp.*, 642 F. Supp. 1339, 1350 (E.D. Va. 1986) (dismissing complaint because "it doesn't appear from the complaint that there is a current threat of release of any toxic substance from that facility"); *see also Oil Re-Refining Co. v. Pac. Recycling, Inc.*, No. 11-cv-6042, 2011 WL 1696254, at *3 (D. Or. May 3, 2011) (dismissing complaint and favorably discussing *Powell Duffryn*); *Bryant v. Colonial Pipeline Co.*, 699 F. Supp. 546, 549 (W.D. Va. 1987) (dismissing complaint because "there is not one word in the Amended Complaint about expenses from release or threatened release of any substances into the environment"). Accepting Plaintiffs' allegations as true, their "threatened release" will not materialize unless (1) existing funds are depleted; (2) a permanent remedy is not implemented; and (3) Panoche is improperly managed *when these first two events come to pass*. This is not remotely close to alleging "the probability that [hazardous substances] would escape" from Panoche. *Powell Duffryn*, 808 F. Supp. at 654-55 (dismissing complaint because there were no allegations "the liquid solution stored in the tanks was capable of escaping into the environment" or "that the liquid was

contained in improper or unsuitable containers or that the storage tanks were corroded, cracked, unsealed, [or] unenclosed").

Because Plaintiffs' theory of "threatened release" is so speculative and contingent on far off events, it raises serious questions as to whether Plaintiffs can salvage their threatened release allegations through amendment.[1]

## V. ALL CLAIMS FAIL THAT DO NOT FALL OUTSIDE CERCLA'S PETROLEUM EXCLUSION

To the extent Plaintiffs allege the hazardous substances allegedly disposed of in Panoche were petroleum-related, their claims are barred by CERCLA's "petroleum exclusion." From the definition of "hazardous substances," CERCLA excludes "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas)." 42 U.S.C. § 9601(14). This exclusion has "received a broad construction," *Kitsigianis Props LLC v. Stanton Sales Corp.*, No. 8:19-cv-1662, 2020 WL 4031789, at *4 (C.D. Cal. Mar. 24, 2020), and "applies even though CERCLA-listed hazardous substances are indigenous in the petroleum or are additives normally added to the petroleum during the refining process." *S. Pac. Transp. Co. v. California (CALTRANS)*, 790 F. Supp. 983, 984 (C.D. Cal. 1991); *see also Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 810 (9th Cir. 1989) ("We rule that the petroleum exclusion in CERCLA does apply to unrefined and refined gasoline even though certain of its indigenous components and certain additives during the refining process have themselves been designated as hazardous substances within the meaning of CERCLA.").

Thus, Plaintiffs' pursuit of claims premised on "petroleum refining sludges" is barred. *See* Dkt. 1 ¶ 24. Also, Plaintiffs cannot pursue claims arising out of "contaminated soils," *id.*, because "the sheltering sweep of the petroleum exclusion is not affected by the presence or absence of soil."

---

[1] "Because Plaintiffs have not stated a viable substantive CERCLA claim against [Exxon], they also have not stated a viable 'declaratory relief under CERCLA' claim." *Alisu*, 2018 WL 6017008, at *5 (citation omitted); *see also Coppola*, 935 F. Supp. at 1011 ("In the absence of a valid § 9607(a) claim, declaratory relief under § 9613(g)(2) is unavailable." (citations omitted)). For these reasons, the Court should dismiss Count II.

*S. Pac. Transp.*, 790 F. Supp. at 986. Further, liability against Exxon cannot attach for "benzene," *see* Dkt. 1 ¶ 40, because the petroleum exclusion bars claims for "fractional petroleum compounds such as benzene." *Gardner v. Chevron Capital Corp.*, No. 15-cv-1514, 2016 WL 7888025, at *1 (N.D. Cal. July 19, 2016) (granting motion to dismiss), *aff'd*, 715 F. App'x 737 (9th Cir. 2018).

If Plaintiffs attempt to replead after their Complaint is dismissed for its conclusory "arranger" and "release or threatened release" allegations, they should only do so if they have a good faith basis to allege that Exxon arranged for disposal of hazardous substances that fall outside the petroleum exclusion. The Complaint fails to identify which substances in Panoche are allegedly attributable to Exxon, and, given that Exxon is a company that engages in oil and gas operations, the "lack of detail renders [Plaintiffs'] claim implausible." *See Gardner*, 715 F. App'x at 738 (affirming dismissal of complaint because district court "correctly found that Gardner's conclusory allegations as to the presence of these [non-petroleum] pollutants were not plausible"). For these additional reasons, the Court should grant Exxon's motion and order that any amended complaint identify the substances falling outside the petroleum exclusion that Exxon allegedly arranged for disposal of.

## VI. CONCLUSION

For these reasons, Defendant Exxon respectfully requests that the Court grant its motion to dismiss.

Dated: March 14, 2022                    MORGAN, LEWIS & BOCKIUS LLP


By: */s/ Joseph Duffy*
    Joseph Duffy
    Stephen E. Fitzgerald (to be admitted *pro hac vice*)
    Attorneys for Defendant Exxon Mobil Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March 2022, I served Defendant Exxon Mobil Corporation's Motion to Dismiss by causing the same to be sent via email to all counsel of record. I attempted to cause service via ECF to all counsel of record as early as 5:15 PM Pacific Time, but was unable to do so due to a prolonged system outage.

*/s/ Sean Radomski*
Sean Radomski