1  ROB BONTA
   Attorney General of California
2  SARAH E. MORRISON, SBN 143459
   Supervising Deputy Attorney General
3  DONALD ROBINSON, SBN 72402
   KATE M. HAMMOND, SBN 293433
4  Deputy Attorneys General
   300 South Spring Street, 11th Floor
5  Los Angeles, CA 90013
   Telephone:  (213) 269-6531
6  Fax:  (213) 897-2802
   Email: kate.hammond@doj.ca.gov
7
8
9  *Attorneys for Plaintiffs*
   *California Department of Toxic Substances Control*
10 *and the Toxic Substances Control Account*
11
12              IN THE UNITED STATES DISTRICT COURT
13
14          FOR THE EASTERN DISTRICT OF CALIFORNIA
15
16 CALIFORNIA DEPARTMENT OF TOXIC          Case No. 2:21-cv-01739-DJC-JDP
   SUBSTANCES CONTROL and the TOXIC
17 SUBSTANCES CONTROL ACCOUNT,             CONSENT DECREE
18              Plaintiffs,
19         v.                              Courtroom: 10 – 13th Floor
                                           Judge: Hon. Daniel J. Calabretta
20                                         Trial Date: None Set
                                           Action Filed: September 24, 2021
21 EXXON MOBIL CORPORATION, et al.
22              Defendants.
23
24
25
26
27

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ........................................................................... 1

II.      JURISDICTION ........................................................................... 4

III.      PARTIES BOUND ...................................................................... 5

IV.      DEFINITIONS ............................................................................ 5

V.      STATEMENT OF PURPOSE ..................................................... 9

VI.      OBLIGATIONS OF PARTICIPATING PARTIES...................... 9

VII.      OBLIGATIONS OF CASHOUT PARTIES ............................... 14

VIII.      FACILITY OPERATOR WORK AND FUNDING AND REIMBURSEMENT FOR FACILITY OPERATOR WORK ....................................... 15

IX.      WORK TAKEOVER AND REPLACEMENT OF FACILITY OPERATOR ... 17

X.      REIMBURSEMENT OF DTSC COSTS ................................... 19

XI.      CERTIFICATE OF COMPLETION ......................................... 19

XII.      INSURANCE ............................................................................ 20

XIII.      FORCE MAJEURE .................................................................. 20

XIV.      DISPUTE RESOLUTION......................................................... 22

XV.      COVENANTS BY PLAINTIFFS .............................................. 23

XVI.      PLAINTIFFS' RESERVATION OF RIGHTS ........................... 24

XVII.      COVENANTS BY SETTLING DEFENDANTS ....................... 26

XVIII.      EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION.................... 27

XIX.      COMPLIANCE WITH APPLICABLE LAW ............................ 30

XX.      NOTICES AND SUBMISSIONS .............................................. 30

XXI.      RETENTION OF JURISDICTION ........................................... 31

XXII.      APPENDICES ........................................................................... 32

XXIII.      MODIFICATION ..................................................................... 32

XXIV.      LODGING AND OPPORTUNITY FOR PUBLIC COMMENT........................ 32

i

XXV.      SIGNATORIES/SERVICE ........................................................................... 33

XXVI.     TERMINATION OR AMENDMENT OF ISE ORDER AND DISMISSAL OF

          WRIT ACTION .......................................................................................... 34

XXVII.    FINAL SETTLEMENT AGREEMENT; NO THIRD-PARTY

          BENEFICIARIES ....................................................................................... 34

XXVIII.   TERMINATION OF CONSENT DECREE ................................................ 35

XXIX.     WASTE-IN DATABASE ............................................................................ 35

XXX.      PURSUIT OF THIRD PARTIES ............................................................... 37

# I.    **BACKGROUND**

1.    The California Department of Toxic Substances Control ("DTSC") and the Toxic Substances Control Account (collectively "Plaintiffs") filed a complaint ("Complaint") against a number of defendants in the United States District Court for the Eastern District of California (the "Court"), pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 et seq., in connection with the Panoche Facility, located at 2251 Lake Herman Road, Benicia, California  94510 (Solano County Parcel Nos. 181-270-01, 181-270-05, and 181-240-05) ("Facility").

2.    The Facility is a closed landfill.  During its period of operations, IT Corporation owned the Facility and operated a Class I hazardous waste treatment and disposal landfill at the Facility.  IT Corporation obtained a closure certification for the landfill on March 27, 2003.  The Facility transitioned to post-closure status pursuant to a Hazardous Waste Facility Postclosure Permit, issued by DTSC on June 20, 2003, under United States Environmental Protection Agency Identification Number CAD000060012.  *See* Cal. Health & Safety Code §§ 25245-25248.

3.    On January 16, 2002, IT Corporation filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (Case No. 02-10118).  On April 5, 2004, the Bankruptcy Court approved the proposed plan and order confirming creation of the IT Environmental Liquidating Trust ("ITELT"), which is to operate pursuant to the IT Environmental Liquidating Trust Agreement. On May 1, 2004, ITELT became the operator of the Facility and permittee on the Permit.  IT Lake Herman Road, LLC, is listed on the Permit as the Facility owner.  Under the Permit and California law, including the California Hazardous Waste Control Law, Cal. Health & Safety Code §§ 25100 et seq. ("HWCL") and implementing regulations, ITELT is required to obtain and maintain sufficient financial assurance relating to the required post-closure activities for the

Facility. *See* Cal. Health & Safety Code § 25245(a)(2); Cal. Code Regs. tit. 22, § 66264.145(e)(3).

4.      ITELT submitted a renewal application for the Permit on December 20, 2012. The Permit has an expiration date of June 20, 2013, however, pursuant to California Health and Safety Code § 25200(c)(1)(B), the Permit remains in effect until the renewal application is either issued or denied by DTSC.  On January 18, 2013, DTSC informed ITELT that the Permit renewal application was administratively complete and began a detailed technical review.

5.      On February 29, 2016, DTSC issued a Summary of Violations ("SOV") for the Facility to ITELT stating that ITELT was in violation of California Code of Regulations title 22, § 66264.145(e)(3), in that the amount submitted to demonstrate financial assurance for the Facility's post-closure activities was less than the post-closure cost estimate, and specifically directed it to address the alleged violation.  DTSC asserted that ITELT's financial assurance coverage was underfunded in the amount of $7,501,025.75.

6.      On April 5, 2016, ITELT informed DTSC that it had no additional financial assets or mechanisms in place to meet the required financial assurance obligations.

7.      On July 28, 2016, DTSC sent correspondence to ITELT indicating that it recalculated the financial assurance shortfall to be $25,346,588.  DTSC also stated that it reserved the right to revise this amount based upon new cost estimates for 30 years of post-closure operations and maintenance.

8.      On November 29, 2016, DTSC issued an Imminent and Substantial Endangerment Determination and Order; and Remedial Action Order ("Order") to certain Settling Defendants (defined in Section IV) and other entities (In re Panoche Facility, DTSC Docket No. HSA-FY 16/17-050). DTSC issued three subsequent amendments to the Order, and the Order together with the amendments are collectively referred to herein as the "ISE Order." At the January 12, 2017, IT Landfills Information Meeting, DTSC informed Settling Defendants and other entities that ITELT had limited resources to conduct post-closure operations, and, accordingly, DTSC was requesting that the Settling Defendants and other entities named in the

ISE Order fund the ongoing operations and maintenance and provide financial assurance for post-closure activities relating to the Facility.

9.      On June 1, 2021, the IT Sites Cooperating Generators Joint Defense Group, a California unincorporated association, of which Settling Defendants are members, filed a Verified Petition for Peremptory Writ and Writ of Mandate and Complaint for Declaratory Relief and Injunction against DTSC in Case No. FCS056611 in Superior Court of the State of California, Solano County ("Writ Action").  The Writ Action challenges the ISE Order for the Panoche Facility, as well as the imminent and substantial endangerment orders for three other former IT Corporation landfill facilities (referred to as the Benson Ridge Facility, the Vine Hill Complex, and the Montezuma Hills Facility).

10.     On September 24, 2021, Plaintiffs filed the Complaint for Recovery of Response Costs and Declaratory Relief, initiating this action.  On March 29, 2022, Plaintiffs filed the First Amended Complaint for Recovery of Response Costs and Declaratory Relief and Abatement of Imminent and Substantial Endangerment, which Complaint was again amended in connection with the lodging of this Consent Decree to name additional defendants (collectively, "Amended Complaint").

11.     Since the issuance of the ISE Order, DTSC and Settling Defendants have engaged in negotiations to resolve the alleged liability of the Settling Defendants for this action and with respect to the ISE Order.

12.     Settling Defendants do not admit any liability arising out of the transactions or occurrences alleged in the Amended Complaint or ISE Order, nor do they acknowledge that any release or threatened release of hazardous substances at or from the Facility has occurred or constitutes an imminent and substantial endangerment to public health or welfare or the environment.  DTSC does not admit any liability or wrongdoing arising out of the allegations alleged in the Writ Action.

13.     This Consent Decree embodies the settlement of disputed claims reached between Plaintiffs and Settling Defendants.  Entry of this Consent Decree shall result in: (1) settlement

and resolution of Settling Defendants' liability for DTSC's claims alleged in the Amended Complaint; (2) DTSC's amendment of the ISE Order to remove Settling Defendants as respondents; and (3) voluntary dismissal of the Writ Action.

14.     The Parties agree that this Consent Decree has been negotiated by the Parties in good faith, settlement of this matter will avoid expensive, prolonged, and complicated litigation between the Parties, and this Consent Decree is fair, reasonable, in the public interest, and consistent with the purpose of CERCLA.

15.     The Parties present this Consent Decree to the Court for approval and entry as a Decree.

16.     The Parties consent to, and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

17.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree constitutes a final judgment between and among the Parties.

THEREFORE, the Court, with the consent of the Parties to this Consent Decree, hereby ORDERS, ADJUDGES, AND DECREES, as follows:

**II.     <u>JURISDICTION</u>**

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 9613(b), and 42 U.S.C. § 6972(a).  Solely for the purposes of this Consent Decree and the Amended Complaint, Settling Defendants waive all objections and defenses they may have to the jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

19.     The Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

III.   **PARTIES BOUND**

20.     Except as otherwise set forth herein, this Consent Decree is binding upon and inures to the benefit of Plaintiffs and the Settling Defendants and their heirs, successors, and assigns.

21.     Any change in ownership or corporate status of a Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

IV.    **DEFINITIONS**

22.     All terms used in this Consent Decree that are defined in Section 101 of CERCLA, 42 U.S.C. § 9601, have the same meaning set forth in that Section.  Additionally, terms used in this Consent Decree that are defined in the QSF Agreement, which is attached hereto as Appendix B, have the same meaning as set forth in the QSF Agreement. Otherwise, the following terms have the following meanings:

A.     "2004 Consent Order" means the consent order entered into between DTSC and ITELT in 2004 in *In re IT Environmental Liquidating Trust*, Docket No. HWCA P1-03/04-011.

B.     "Affiliates" means any parent, subsidiary, division, sister-company, and other business entities that are PRPs at the Facility for whose Database tonnage a Settling Defendant is settling as set out in Appendix A-1 and Appendix A-3. Affiliates excludes any entity that meets all of the following:  (1) it is not listed in Appendix A-1 or A-2; (2) it is not listed in the transaction report provided to DTSC on or about July 20, 2023, for the Settling Defendants; and, (3) it is not listed as a generator in the Database.

C.     "Cashout Parties" means the entities listed in Appendix A-2, and any of their Affiliates.

D.     "CERCLA" means the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq.

E.       "Database" means the waste-in database that was prepared by the Settling Defendants' database consultant, which was previously reviewed and accepted by DTSC for purposes of this settlement.  The Database includes liquid waste hauler records and manifests documenting shipments of materials to the Facility.

F.       "DTSC" means the State of California Department of Toxic Substances Control.

G.       "DTSC Future Response Costs" means costs recoverable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and/or under section 25360 of the California Health and Safety Code incurred by DTSC after December 31, 2022: (i) required to address alleged non-compliance with the Consent Decree; (ii) in connection with a work takeover pursuant to Section IX.31(Work Takeover Determination); and (iii) pursuing recoveries from Non-Settlors.

H.       "DTSC Past Response Costs" means $619,865.90 allocated to this Facility.  This amount is the result of a compromise reached between the Parties and covers all costs of response recoverable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and all costs recoverable under section 25360 of the California Health and Safety Code, through December 31, 2022, including all those costs reflected in the documentation provided to the Settling Defendants on March 7, 2023, as support for DTSC's past cost claim in connection with the Facility.

I.       "Consent Decree Effective Date" means the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

J.       "Facility Operator" means the current operator, ITELT, and any future operator of the Facility, as the term "operator" is defined under California Code of Regulations title 22, § 66260.10.

K.       "Facility Owner" means IT Lake Herman Road, LLC and any future owner of the Facility, as the term "owner" is defined under California Code of Regulations title 22, § 66260.10.

L.      "Facility Operator Costs" means any costs incurred by the Facility Operator in connection with or associated with the Facility Operator Work, including, but not limited to, field work, management, administration, accounting, reporting, insurance, costs of financial assurance mechanisms, recordkeeping, permitting, Permit Fees, taxes, dispute resolution costs, legal fees and costs, and/or penalties for violations of laws and regulations that occur after the Consent Decree Effective Date. Among other things, Expenses and Contingencies are intended to cover any and all Facility Operator Costs (as such terms are defined in the QSF Agreement).

M.      "Facility Operator Work" means all activities, including, but not limited to, all associated administrative record keeping and reporting actions, required to comply with the Permit, the 2004 Consent Order, and applicable regulations and statutory requirements for post-closure and/or corrective action with respect to the Facility, as each is amended over time. In the event the Permit is amended and supersedes and terminates the 2004 Consent Order for the Facility (which will occur if a new Facility Operator is put in place who does not consent to assignment of the 2004 Consent Order for the Facility). Facility Operator Work will mean all activities required to comply with the Permit and applicable regulations and statutory requirements for post-closure and/or corrective action with respect to the Facility, as each is amended over time.

N.      "Fiscal Year" means the twelve-month period beginning September 1 each year and ending August 31 each year (or as otherwise agreed by DTSC and the Participating Parties).

O.      "Financial Assurance" means a demonstration by the Facility Operator to DTSC of financial assurance, using any of the options listed in California Code of Regulations title 22, § 66264.145 and any then-existing regulations, both (i) for post-closure care in accordance with the approved post-closure plan including amendments to that plan made during any renewal, reissuance, or modification of the Permit, and (ii) in amounts sufficient to enable

DTSC to renew, reissue, or modify the Permit consistent with California Health and Safety Code § 25205 and any then-existing statutes and regulations relating to financial assurance.

P.    "ITELT's Post-Closure Insurance" means the two insurance policies issued by American International Specialty Lines Insurance Company to IT Corporation to provide financial assurance for closure and post-closure for, among other sites, the Facility, including Policy 4762403 and Policy 4760892.

Q.    "Non-Settlor" or "Non-Settlors" means those PRPs that are not Parties to this Consent Decree.

R.    "Non-Qualified Settlement Fund" or "Non-QSF" means a fund or account that shall be established by the Participating Parties pursuant to this Consent Decree to hold and disburse, in accordance with the QSF Agreement, any Settlement Funds received in connection with this Consent Decree that cannot be placed into the QSF, including, but not limited to, revenue generated at the Facility as applicable, together with any investment returns on such Non-QSF funds.

S.    "Participating Parties" means the entities listed in Appendix A-1, and any of their Affiliates.

T.    "Participating Parties Work" means the obligations Participating Parties are required to perform as set forth in Section  VI.24.C

U.    "Parties" means Plaintiffs and Settling Defendants. Each individually is referred to as a "Party."

V.    "Permit" means the HWCL Hazardous Waste Facility Postclosure Permit for the Facility, CAD 000060012, issued on June 20, 2003, and any subsequent amendments, modifications, and renewals of the Permit.

W.    "Permit Fees" means the Permit fees or other charges charged by DTSC, after the Consent Decree Effective Date, in accordance with California Health & Safety Code § 25205.2(d), § 25205.7, and the definitions and procedures set forth in §§ 25206.1 through

25206.4 and any other then-existing statutes and regulations that address the recovery of fees or costs incurred for permitting of the Facility Operator Work.

X.      "Plaintiffs" means DTSC and the Toxic Substances Control Account.

Y.      "PRPs" means persons that are potentially covered persons under CERCLA Section 107(a)(1)-(4), 42 U.S.C. § 9607(a)(1)-(4).

Z.      "Qualified Settlement Fund" or "QSF" means the settlement fund for the Facility, which shall be established by the Participating Parties pursuant to this Consent Decree and governed by the QSF Agreement (Appendix B hereto), the terms of which are made part of and incorporated into this Consent Decree and therefore binding on all Parties.

AA.     "RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

BB.     "Settling Defendants" means the Cashout Parties and Participating Parties. Each individually is referred to as a "Settling Defendant."

CC.     "Settlement Funds" means the funds for the Facility in the Qualified Settlement Fund and those in the Non-Qualified Settlement Fund.

DD.     "Settlement Funds Manager" means the financial institution, selected and authorized by the Participating Parties, with the written consent of DTSC (whose consent will not be unreasonably withheld or delayed), to hold, manage, invest, and administer Settlement Funds (and as such term is further defined in the QSF Agreement).

**V.      STATEMENT OF PURPOSE**

23.     The objectives of the Parties in entering into this Consent Decree are to protect public health and welfare and the environment, to assure adequate funding to perform the Facility Operator Work, to settle Plaintiffs' claims against Settling Defendants alleged in the Amended Complaint, and to resolve the claims of Settling Defendants against DTSC in the Writ Action.

**VI.     OBLIGATIONS OF PARTICIPATING PARTIES**

24.     Obligations of Participating Parties:

9

A.      The obligations of Participating Parties under this Consent Decree are joint and several.  In the event of the insolvency of any Participating Party or the failure of any Participating Party to implement any requirement of this Consent Decree, the remaining Participating Parties must complete all such requirements.

B.      Participating Parties' obligations under this Consent Decree are independent of and unaffected by any nonperformance by Cashout Parties and Non-Settlors and remain in full force and effect regardless of whether Cashout Parties have complied with their obligations under this Consent Decree.

C.      <u>Performance of the Participating Parties Work</u>.  Participating Parties must:

1.      Except as otherwise provided in Section IX.31(Work Takeover Determination), assure a Facility Operator is in place to perform the Facility Operator Work, on a continuous basis during the term of this Consent Decree;

2.      Starting no later than one hundred twenty (120) days from the Consent Decree Effective Date, demonstrate adequate and available funding for the initial Financial Assurance amount set forth in Appendix D meeting the requirements set forth in California Code of Regulations title 22, § 66264.145 or any then-existing regulations. When the Financial Assurance amount is re-evaluated by DTSC per a permit renewal or otherwise, the Participating Parties shall demonstrate adequate resources and available funding for the updated Financial Assurance amount calculated as specified in Appendix D within forty-five (45) calendar days of DTSC's technical completeness letter or its equivalent.

3.      Assure that an appropriate Settlement Funds Manager is in place to (a) manage the Settlement Funds for the Facility, (b) oversee the appropriate distribution of funds from the Settlement Funds for the Facility, consistent with the requirements of this Consent Decree, and (c) complete reporting, tax and other filings, and other such matters as required for the management and administration of the Settlement Funds for the Facility in accordance with the QSF Agreement (Appendix B); and

4.      Make payments into the QSF and report to DTSC in accordance with the QSF Agreement (Appendix B).

D.      <u>Performance of the Facility Operator Work</u>.  If the Participating Parties elect to perform the Facility Operator Work, Participating Parties must perform the Facility Operator Work on a continuing basis until a replacement Facility Operator is put in place and performs the Facility Operator Work pursuant to the terms of this Consent Decree. The Participating Parties' performance of Facility Operator Work does not relieve the Participating Parties from the obligation to complete the Participating Parties Work or any other obligations required by the Consent Decree.

E.      <u>Establishment of QSF</u>.  Participating Parties must establish a QSF and a Non-QSF (both of which shall be governed by the QSF Agreement attached as Appendix B) within sixty (60) calendar days after the Consent Decree Effective Date.  Before establishing the QSF, DTSC must approve the Settlement Funds Manager.  DTSC's approval shall not be unreasonably withheld and must be provided within fifteen (15) calendar days after the Settlement Funds Manager is proposed by the Settling Defendants or as soon as reasonably possible thereafter.  The management of Settlement Funds must be in accordance with the QSF Agreement. Payment of money into the QSF is not a fine, penalty, or monetary sanction. Further, the Settlement Funds Manager shall administer the money in the QSF only for the enumerated purposes under this Consent Decree as set forth in the QSF Agreement.

F.      <u>Initial Payment into the QSF by the Participating Parties</u>.  In consideration of the terms of this Consent Decree, the Participating Parties must make a combined payment into the QSF or into an escrow account, if the QSF has not yet been established, of $2,000,000.00 (Two Million Dollars) within ninety (90) calendar days of the Consent Decree Effective Date.  The Participating Parties may make additional financial contributions to the QSF at their own election.  The manner in which the Participating Parties allocate this initial payment, or subsequent payments, among themselves is solely within their discretion and does not modify or affect the obligations of the Participating Parties under this Consent Decree.

11

1   //

2   //

3            G.      True-Up Payments.

4                    1.      Annual True-Up Obligation:  If the (i) Non-Principal plus

5   cumulative Net ROI (both as defined in the QSF Agreement) is less than the (ii) annual Expenses

6   (as defined in the QSF Agreement) budgeted for the upcoming Fiscal Year based on the annual

7   budget for the Facility Operator Work including budgeted reimbursement requests by DTSC or

8   the Participating Parties as described in Section VIII.28.A of this Consent Decree, the

9   Participating Parties must pay the difference into the QSF as set forth in the QSF Agreement.

10  The QSF becomes available to pay costs authorized by DTSC, as set forth herein and in the QSF

11  Agreement, after ITELT's Post-Closure Insurance for the Facility is depleted.

12                   2.      Annual Principal Replenishment Obligation:  The Participating

13  Parties must make annual replenishment payments into the QSF equal to the total disbursements

14  from the QSF that are applied to Principal for Contingencies over the past Fiscal Year.  Annual

15  Principal Inflation Adjustments shall be calculated as though no disbursements or corresponding

16  replenishment payments were applied to Principal.

17                   3.      Settlement Funds Relative to Principal:  At the end of the fifth

18  (5th) Fiscal Year, and once every five (5) Fiscal Years thereafter, the Participating Parties shall

19  compare the combined balance of the Settlement Funds to the Principal amount and provide in

20  writing those values and underlying supporting information to DTSC.  If, as of the end of that

21  Fiscal Year, the balance of the Settlement Funds is less than the Principal amount (including the

22  amounts paid into the Principal and the cumulative Principal Inflation Adjustment as defined in

23  the QSF Agreement), the Participating Parties must pay the difference into the QSF.

24                   4.      True-Up and Replenishment Payments:  The calculations as to the

25  amounts Participating Parties must pay into the QSF as set forth in Paragraph  VI.24.G.1 (Annual

26  True-Up Obligation), VI.24.G.2 (Annual Principal Replenishment Obligation), and VI.24.G.3

27  (Settlement Funds Relative to Principal) of this Section shall be made by the Participating Parties

based on information provided by the Settlement Funds Manager in accordance with the QSF

Agreement.  If DTSC and the Participating Parties agree as to an alternative calculation for

purposes of the annual true-up obligation, the annual Principal replenishment obligation, or

Settlement Funds relative to Principal, the agreed-upon calculations shall be used.  If DTSC and

Participating Parties disagree as to the calculations, including disputing the accuracy or validity

of the Settlement Funds Manager's information, the issue may be resolved pursuant to the

dispute resolution process set out herein in Section XIV.42.  If the Parties are unable to reach a

resolution by December 1st of any Fiscal Year regarding the amount of any annual true-up

obligation or annual Principal replenishment obligation pursuant to the dispute resolution

procedure set forth in Section  XIV, the Participating Parties must pay DTSC's determination of

the annual true-up obligation and/or annual Principal replenishment obligation, as applicable,

into the QSF.  If, after resolution, the Participating Parties' annual true-up obligation and/or

annual Principal replenishment obligation, as applicable, is eliminated or reduced, Participating

Parties may submit a request for reimbursement of that amount from the QSF to DTSC for

approval.  DTSC shall promptly submit a Disbursement Authorization in that amount to the

Settlement Funds Manager.

H.    Payment of DTSC's Future Response Costs.  DTSC's Future Response

Costs shall be paid from either the Non-QSF or QSF as set forth in Section X (Reimbursement of

DTSC Costs).

I.    Payment for DTSC Past Response Costs.  DTSC Past Response Costs

must be reimbursed as follows:

1.    First Payment.  Participating Parties must pay $232,449.71 to

DTSC within sixty (60) calendar days after the Consent Decree Effective Date or by January 31,

2024, whichever is later.

2.    Second Payment.  The Settlement Funds Manager shall pay the

second payment, pursuant to a fully executed Disbursement Authorization from DTSC in

accordance with the QSF Agreement, in the amount of $387,416.19 minus the amount of DTSC

Past Response Costs the Cashout Parties have paid into the QSF within two (2) years after the Consent Decree Effective Date.  The second payment shall be paid to DTSC from the Non-QSF and/or QSF within two (2) years after the Consent Decree Effective Date.  If the amount available in the Settlement Funds other than the Principal is not sufficient to timely make the second payment, the Participating Parties must make a payment into the QSF in an amount sufficient to pay DTSC for this second payment, no later than thirty (30) days after the end of the two (2) year period after the Consent Decree Effective Date.

3.      The above-referenced payments must be made by check payable to "Department of Toxic Substances Control" and bearing on its face the project code for the Facility (Facility Code Number 200175-00) and Case No. 2-21-cv-01739 and mailed to DTSC either by Federal Express or U.S. Mail as follows:

> If sent by Federal Express:
> Department of Toxic Substances Control
> Attn: Cristina Panainte
> 1001 I Street, 21st Floor
> Sacramento, CA  95812
> Ph: (916) 327-1189
>
> If sent by U.S. Mail:
> Department of Toxic Substances Control
> PO Box 806
> Sacramento, CA  95812

## VII.   OBLIGATIONS OF CASHOUT PARTIES

25.    Payment by Cashout Parties:

A.      In consideration of the terms of this Consent Decree, each of the Cashout Parties must make payments into the QSF within sixty (60) calendar days from the Consent Decree Effective Date or by January 31, 2024, whichever is later, and in the amounts set out in Appendix A-3, the Cashout Schedule, as determined by Appendix C, attached hereto, the Payment Calculator for Cashout Parties.  Such funds shall be deposited into the QSF, in accordance with the QSF Agreement, or, if the QSF has not yet been established, into an escrow account until the QSF is established.

B.      Evidence of payment of these required amounts by Cashout Parties must be provided to DTSC either by the Participating Parties or by any escrow agent charged by any Cashout Parties to transfer such payments to the QSF.

26.     <u>QSF Payment Instructions</u>.  Payments must be made electronically or by check(s) made out to the escrow account or Settlement Funds Manager for ultimate deposit only to the Facility's QSF sub-account, identified by name and number, identifying the payer and type of payment as "Cashout Party."  Notification of deposits must be provided within thirty (30) calendar days after the payment is made by the escrow manager or Settlement Funds Manager to DTSC and identified with the relevant account name and number.

**VIII.    <u>FACILITY OPERATOR WORK AND FUNDING AND REIMBURSEMENT FOR FACILITY OPERATOR WORK</u>**

27.     The Facility Operator will implement all the Facility Operator Work under the oversight of DTSC.

28.     The following procedure will be used for budgeting and funding of the Facility Operator, unless DTSC initiates a work takeover of the Facility Operator Work pursuant to Section IX.31 (Work Takeover Determination) or the procedure is modified by agreement of the Parties:

A.      No later than March 1st of each year (or as otherwise agreed by DTSC and the Participating Parties), (a) the Facility Operator will submit to DTSC and the Participating Parties a draft annual budget for the Facility Operator Costs (including Expenses and Contingencies, as appropriate) for the upcoming Fiscal Year, (b) Participating Parties will submit to DTSC a draft annual budget for the upcoming Fiscal Year for reimbursement of costs incurred pursuing Non-Settlors, (c) DTSC will submit an estimate of its Future Response Costs that have been incurred but not yet reimbursed and for which DTSC anticipates submitting for reimbursement in the upcoming Fiscal Year, and (d) the Settlement Funds Manager will submit a draft annual budget to DTSC and the Participating Parties for the upcoming Fiscal Year for the costs for administration of the Settlement Funds and taxes imposed on the Settlement Funds, if

15

any.  As feasible, and for informational purposes only, the Facility Operator will also identify

long-term maintenance items planned for the next five (5) years, with cost estimates if available.

Participating Parties will combine the budgets submitted pursuant to (a), (b), (c), and (d) into a

consolidated draft annual budget and provide it to DTSC.

          B.     Within two (2) months of receipt of the draft consolidated annual budget,

DTSC and the Participating Parties shall provide any comments on the consolidated annual

budget and shall address any disputes within four (4) months thereafter pursuant to the dispute

resolution procedure set forth in Section  XIV.  If the Parties are unable to finalize a consolidated

annual budget pursuant to the dispute resolution procedure by December 1st and the

Participating Parties would have a true-up obligation, as set forth in Section  VI.24.G.1 (Annual

True-Up Obligation) based on DTSC's determination of that obligation, Participating Parties

must pay the true-up obligation established by DTSC.  If, after resolution, the Participating

Parties' true-up obligation is eliminated or reduced, Participating Parties may submit a request

for reimbursement of that amount from the QSF to DTSC for approval.  DTSC shall promptly

submit a Disbursement Authorization in that amount to the Settlement Funds Manager.

          C.     An annual consolidated budget shall be finalized before the start of each

Fiscal Year, and the Facility Operator, Participating Parties, and DTSC shall all make their best,

good faith efforts to adhere to such budget.

        29.    <u>Unanticipated Intra-Year Funding Requirement</u>.  If at any time unanticipated

Expenses or Contingencies occur that cause the Settlement Funds Manager, the Facility

Operator, or DTSC to anticipate that available Settlement Funds will not be sufficient to pay

Facility Operator Costs or other required disbursements from the Settlement Funds, such party

shall provide notice to DTSC, the Facility Operator and the Participating Parties, as applicable.

Upon such notice, the Facility Operator, Settlement Funds Manager, or DTSC will provide an

updated annual consolidated budget to reflect additional funds needed before the next true-up or

replenishment payment will be received pursuant to the QSF Agreement, including an allowance

for the time needed to receive and process such payment.  Participating Parties must within forty-

five (45) calendar days (or sooner if required for continued Facility Operator Work) pay to the QSF the additional funds.  If the Participating Parties dispute the updated budget, DTSC, the Participating Parties, and the Facility Operator will meet and confer in an effort to resolve the dispute.  The Participating Parties may invoke the dispute resolution procedures set forth in Section  XIV.  In all instances, the Participating Parties must pay amounts to the QSF to ensure sufficient funds to secure continued performance of all Facility Operator Work and other required payments from the Settlement Funds.  If, after resolution, the Participating Parties' true-up or replenishment obligation is eliminated or reduced, Participating Parties may submit a request for reimbursement of that amount from the QSF to DTSC for approval.  DTSC shall promptly submit a Disbursement Authorization in that amount to the Settlement Funds Manager.

A.    Facility Operator Cost Reimbursement.  Every two months (or more frequently in the instance of a large, unanticipated expenditure), to the extent revenues from the operation of the Facility are insufficient to cover Facility Operator Costs, the Facility Operator will submit requests for reimbursement of Facility Operator Costs to DTSC and the Settlement Funds Manager, with a copy to the Participating Parties.  DTSC will review the requests for reimbursement and approve or reject the requests.  DTSC may reject the request if DTSC determines the request for reimbursement contains errors or does not reflect legitimate Facility Operator Costs.  In the event of the existence of errors, DTSC may notify the Facility Operator to resolve the errors and provide corrected invoices, if needed.  DTSC will consider input from the Participating Parties on such requests for reimbursement.  After DTSC approves payment of all or a portion of a particular request for reimbursement, the Settlement Funds Manager must promptly take the appropriate steps to allow for payment to the Facility Operator.  After DTSC's written approval of the request for reimbursement, the Settlement Funds Manager must pay Facility Operator Costs in accordance with the QSF Agreement.

**IX.    WORK TAKEOVER AND REPLACEMENT OF FACILITY OPERATOR**

30.    Cooperation on Replacement of Facility Operator.  Participating Parties and DTSC, in its regulatory capacity, will meet and confer cooperatively to discuss process changes

and other improvements at the Facility to achieve operational efficiencies and reduce costs of compliance, while ensuring that Facility Operator Work continues to meet all statutory and regulatory requirements in a safe and reliable manner.

31.   <u>Work Takeover Determination</u>.  If DTSC determines that the Facility Operator (i) has ceased to perform any of the Facility Operator Work; (ii) is seriously or repeatedly deficient or late in performing the Facility Operator Work; or (iii) is performing the Facility Operator Work in a manner that may cause an endangerment to human health or the environment, DTSC may issue a notice of work takeover to the Facility Operator and copy the Participating Parties, including a description of the grounds for the notice and a period of time ("Remedy Period") within which Facility Operator must remedy the circumstances giving rise to the notice. The Remedy Period will be sixty (60) calendar days, unless DTSC determines in its unreviewable discretion that there may be an endangerment, in which case the Remedy Period will be twenty (20) calendar days.

32.   <u>Work Takeover</u>.  If DTSC initiates a work takeover, the Participating Parties can request to become the Facility Operator or find a replacement Facility Operator.  In that instance, DTSC may approve the replacement Facility Operator pursuant to Section  IX.33 (Replacement of Facility Operator) below.  If the Participating Parties do not identify a replacement Facility Operator acceptable to DTSC within six months of the work takeover, DTSC can designate an interim Facility Operator (other than the Participating Parties) until such time as the Participating Parties identify and put in place a new Facility Operator that is acceptable to DTSC pursuant to the terms of this Consent Decree.  The work takeover shall conclude after the new Facility Operator begins the Facility Operator Work, following an appropriate transition process.

33.   <u>Replacement of Facility Operator</u>.  At any time (including, but not limited to, outside of a work takeover situation), the Participating Parties may request that DTSC approve a replacement Facility Operator.  In that instance, DTSC, in its regulatory capacity, will consider whether the proposed replacement Facility Operator is appropriate, whether the permit modification application for a replacement Facility Operator is in accordance with California

Code of Regulations title 22, section 66270.42, and other then-existing statutes and regulations, whether the proposed Facility Operator would have appropriate access to the Facility, and what steps and conditions are required to ensure such replacement Facility Operator will be able to fulfill the Facility Operator obligations as the permittee.  Consistent with DTSC's permitting authority under the HWCL, in considering a request from the Participating Parties to replace the Facility Operator, DTSC may consider (i) the performance of the existing Facility Operator, (ii) whether the existing Facility Operator complies with regulatory and statutory requirements applicable to operators and permittees, and (iii) whether the proposed Facility Operator is qualified for the position and able to comply with all regulatory and statutory requirements applicable to completing the Facility Operator Work.  Any replacement Facility Operator must agree to assume all responsibility for the Facility Operator Work and comply with applicable statutory and regulatory requirements, until replaced by a subsequent Facility Operator pursuant to the terms of this Consent Decree.  Nothing in this paragraph impairs the permitting, regulatory, or statutory authority of DTSC pursuant to the HWCL or otherwise.

**X.    REIMBURSEMENT OF DTSC COSTS**

34.    DTSC may submit requests for reimbursement for its Future Response Costs, which it has incurred but which have not yet been reimbursed.

35.    To request reimbursement, DTSC will submit a Disbursement Authorization (as defined in the QSF Agreement), no more frequently than quarterly to the Settlement Funds Manager in accordance with the QSF Agreement.  If the amount available in the Settlement Funds for the Facility, other than the Principal for the Facility, is not sufficient to reimburse DTSC, the Participating Parties must make a payment into the QSF in an amount sufficient to reimburse DTSC for the request for reimbursement for its Future Responses Costs.

**XI.    CERTIFICATE OF COMPLETION**

36.    <u>Certificate of Completion</u>.  Upon Participating Parties' request, DTSC will issue a Certificate of Completion to Participating Parties, when DTSC determines, in its discretion, that the balance in the QSF account for the Facility is self-sustaining or pursuant to the procedures set

forth in California Code of Regulations title 22, §§ 66264.120 and 66264.145(j)(1) and any then-existing regulations.  Following such Certificate of Completion, DTSC may elect to continue having Settlement Funds managed in the QSF under the direction of an entity to be determined, or transfer the Settlement Funds to the State Treasury (to a special account for the Facility), for the benefit of DTSC.

**XII.   INSURANCE**

37.   The costs of insurance for the Facility Operator shall be a Facility Operator Cost to be included in its annual budget.

**XIII.   FORCE MAJEURE**

38.   "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Participating Parties, of any entity controlled by Participating Parties, or of Participating Parties' contractors that delays or prevents the performance of any of Participating Parties' obligation under this Consent Decree despite their best efforts to fulfill the obligation.  The requirement of "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure and best efforts to address the effects of any potential Force Majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible.  "Force Majeure" does not include financial inability to complete the Participating Parties Work or the Facility Operator Work.

39.   If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Participating Parties intend or may intend to assert a claim of force majeure, Participating Parties shall notify DTSC within thirty (30) calendar days of when Participating Parties first knew that the event would cause a delay.  Within thirty (30) calendar days of such notification, Participating Parties shall provide in writing to DTSC: an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the

delay; Participating Parties' rationale for attributing such delay to a Force Majeure; and a statement as to whether, in the opinion of Participating Parties, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Participating Parties shall include with any notice all available documentation supporting their claim that the delay was attributable to a Force Majeure.  Participating Parties shall be deemed to know of any circumstance of which Participating Parties or Participating Parties' contractors knew.  Failure to comply with the above requirements regarding an event shall preclude Participating Parties from receiving a determination of Force Majeure regarding that event, provided, however, that if DTSC, despite the late or incomplete notice, is able to assess to its satisfaction whether the event is a Force Majeure and whether Participating Parties have exercised their best efforts, DTSC may excuse in writing Participating Parties' failure to submit timely or complete notices under this Paragraph.

40.     If DTSC agrees that the delay or anticipated delay is attributable to a Force Majeure, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure will be extended for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the Force Majeure shall not, of itself, extend the time for performance of any other obligation.  If DTSC does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure, DTSC will promptly notify Participating Parties in writing of its decision.  If DTSC agrees that the delay is attributable to a Force Majeure, DTSC will notify Participating Parties in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure.

41.     If Participating Parties elect to invoke the dispute resolution procedures set forth in Section XIV regarding the existence of a Force Majeure, they shall do so no later than twenty (20) calendar days after receipt of DTSC's notice.  In any such proceeding, Participating Parties shall have the burden of demonstrating by a preponderance of the evidence that: (i) the delay or anticipated delay has been or will be caused by a Force Majeure; (ii) the duration of the delay or

the extension sought was or will be warranted under the circumstances; (iii) best efforts were exercised to avoid and mitigate the effects of the delay; and (iv) Participating Parties complied with the requirements of the Consent Decree.  If Participating Parties carry this burden, the delay at issue shall be deemed not to be a violation by Participating Parties of the affected obligation of this Consent Decree identified to DTSC and the Court.

**XIV.** **DISPUTE RESOLUTION**

42.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve all disputes regarding this Consent Decree including, but not limited to, replacement of the Facility Operator, Facility Operator cost reimbursement, and any dispute relating to annual true-up or annual Principal replenishment obligations or the comparison of the balances of the Settlement Funds with the Principal, or costs sought by any Party(ies) from the QSF.  However, if the Settling Defendants fail to follow the procedures in this Section for resolving disputes regarding this Consent Decree, they shall have waived their right to further administrative consideration of the disputed issue.

43.     Any dispute regarding this Consent Decree must in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations must not exceed thirty (30) calendar days from the time the dispute arises unless the time period is shortened or extended by written agreement between or among the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

44.     Statements of Position.

A.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by DTSC is considered binding unless, within thirty (30) calendar days after the conclusion of the informal negotiation period, the Settling Defendant(s) that are parties to the dispute invoke(s) the formal dispute resolution procedures of this Section by serving on DTSC a written Statement of Position on the

matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Defendant(s) that are parties to the dispute.

        B.     Within thirty (30) calendar days after receipt of the Statement of Position, DTSC will serve on the Settling Defendant(s) that are parties to the dispute its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting its position and all supporting documentation upon which it relies.  Within ten (10) calendar days after receipt of DTSC's Statement of Position, the Settling Defendant(s) that are parties to the dispute may submit a Reply.

        C.     If the parties to the dispute are not able to resolve the dispute, the Director of DTSC will issue a final administrative decision resolving the dispute.

        D.     DTSC's final administrative decision shall be binding upon Settling Defendants unless, within thirty (30) calendar days of having received the final administrative decision, the Settling Defendant(s) that are parties to the dispute appeal to this Court to resolve the dispute.

        45.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendants under this Consent Decree not directly in dispute or necessarily affected thereby, unless DTSC or the Court agrees otherwise.

## XV.    COVENANTS BY PLAINTIFFS

        46.     <u>Covenant Not to Sue</u>.  In consideration of the actions that will be performed and the payments that will be made by Settling Defendants under this Consent Decree, and except as specifically provided in this Paragraph and Section XVI.48 (Plaintiffs' Reservation of Rights), Plaintiffs covenant not to sue or to take administrative action against Settling Defendants for the Matters Addressed in this Consent Decree.  These covenants take effect for the Cashout Parties upon satisfaction of the obligations in Section VII (Obligations of Cashout Parties) and for the Participating Parties upon satisfaction of all of the following actions: Participating Parties'

obligations set out in Section VI.24.F(Initial Payment into the QSF by the Participating Parties);

Participating Parties' obligations in Section VI.24.I.1 (Payment for DTSC Past Response Costs,

First Payment); and Settling Defendants' dismissal of the Writ Action with prejudice set out in

Section  XXVI.81 (Termination or Amendment of ISE Order and Dismissal of Writ Action).

This Covenant Not to Sue extends only to the Settling Defendants and does not extend to any

other person, and is conditioned on the satisfactory performance by the Settling Defendants of

the obligations under the Consent Decree.

47.    "Matters Addressed."  Matters Addressed includes all Participating Parties Work

performed pursuant to this Consent Decree, any and all civil liability for reimbursement of all or

any portion of DTSC Past Response Costs and DTSC Future Response Costs, and declaratory

relief, injunctive relief or any other relief under CERCLA or RCRA (including, but not limited

to, a citizen suit under RCRA, 42 U.S.C. § 6972), the Carpenter-Presley-Tanner Hazardous

Substance Account Act (Cal. Health & Safety Code §§ 25300 et seq.), the Hazardous Waste

Control Act (Cal. Health & Safety Code §§ 25100 et seq.), the Porter-Cologne Water Quality

Control Act (Cal. Water Code §§ 13000 et seq.), or common law, arising in whole or part from

the releases and threatened releases of hazardous substances at and from the Facility.

## XVI.   PLAINTIFFS' RESERVATION OF RIGHTS

48.    Plaintiffs' Covenant Not to Sue set forth in Section XV (Covenants by Plaintiffs)

above does not pertain to the following matters, which DTSC reserves, and this Consent Decree

is without prejudice to all rights, claims, and causes of action DTSC may have against a Settling

Defendant, with respect to the following:

A.    failure of the Settling Defendant to meet a requirement of this Consent

Decree;

B.    damage to natural resources, as defined in § 101(6) of CERCLA, 42

U.S.C. § 9601(6), including all costs incurred by any natural resources trustees;

C.    liability arising from future actions by the Settling Defendant(s) not

addressed by the Consent Decree and relating to the Facility;

24

D.     liability arising from the past, present, future disposal, release, or threat of release of a hazardous substance, pollutant, or contaminant from locations other than the Facility;

E.     criminal liability;

F.     claims in the bankruptcy proceedings of any Participating Party; and

G.     DTSC's statutory and regulatory remedies against any Participating Party with respect to their operation of the Facility after the Consent Decree Effective Date if they become the Facility Owner or Facility Operator pursuant to the terms of this Consent Decree.

49.     Plaintiffs reserve the right to seek additional relief from a Cashout Party, and this Consent Decree is without prejudice to Plaintiffs' right to institute proceedings in this action or a new action or to issue an administrative order if:

A.     information is discovered indicating that such Cashout Party's contribution of hazardous substances to the Facility is subsequently determined to be at least 50% greater by volume than known as of the Consent Decree Effective Date; any such additional relief shall relate only to that newly-discovered volume which is in excess of the volume previously settled; or

B.     after the Cashout Party signs this Consent Decree, such Cashout Party becomes an owner or operator of the Facility or takes intentional acts to dispose or arrange for the disposal of hazardous substances or solid wastes at the Facility; or

C.     the Cashout Party has a past or current Affiliate that has contributed waste to the Facility that has not been included in any volume resolved through a payment under Section VII.25.A and Appendix A-3.

50.     DTSC reserves all rights that it may have as to any matter relating in any way to the Facility against any person who is not a Party to this Consent Decree.  DTSC also reserves the right to seek relief from any entity whose corporate relationship to a Settling Defendant is created after the Settling Defendant executes the Consent Decree if such entity has not separately resolved its potential liability through entry into and compliance with this Consent Decree.

51.     Notwithstanding any other provision in the Consent Decree, DTSC reserves the right to institute proceedings in this action or a new action, and/or to issue an administrative order, seeking to compel Participating Parties to perform response actions at or related to the Facility or pay DTSC's response costs, if: (a) conditions at or relating to the Facility previously unknown to DTSC are discovered after the Consent Decree Effective Date by DTSC; and (b) DTSC determines that these conditions together with other relevant information indicate that performance of the Facility Operator Work is not protective of human health and the environment.

52.     Subject to Section XV (Covenants by Plaintiffs), nothing in this Consent Decree limits any authority of DTSC to (a) take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of any hazardous substance on, at, or from the Facility, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of any hazardous substance on, at, or from the Facility.

**XVII.  <u>COVENANTS BY SETTLING DEFENDANTS</u>**

53.     Subject to the reservations in Section XVII.54 below, Settling Defendants covenant not to sue and agree not to assert claims or causes of action against DTSC with respect to the Facility and this Consent Decree, including:

A.     the claims asserted by Plaintiffs in this case under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C § 6972(a); and

B.     any claims arising out of response actions at or in connection with the Facility.

54.     <u>Settling Defendants' Reservations</u>

A.     The covenants in Paragraph 53 shall not apply to state entities (excluding DTSC) who are liable for claims with respect to the Facility.

26

B.      The covenants in Paragraph 53 shall not apply if DTSC brings a cause of action or issues an order pursuant to any of the reservations in Section XVI ( Reservation of Rights), other than in Section XVI.48.A  (claims for failure to meet a requirement of the Consent Decree), XVI.48.E (criminal liability), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that DTSC is seeking pursuant to the applicable reservation.

C.      Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against DTSC brought pursuant to any statute other than CERCLA, RCRA, or the Carpenter-Presley-Tanner Hazardous Substance Account Act (Cal. Health & Safety Code §§ 25300 et seq.) and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA for money damages for injury or loss of property or personal injury or death caused by any future negligent or wrongful act or omission of any employee or agent of DTSC, while acting within the scope of his or her office or employment under circumstances where DTSC, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, this reservation shall not include any claim based on DTSC's selection of response actions, post-closure, or corrective action, or the oversight or approval of the Facility Operator's plans, reports, other deliverables, or activities.

55.      Settling Defendants' Claims Among and Between Settling Defendants against Other Settling Parties.  As to the Matters Addressed, Settling Defendants agree not to assert any claims or causes of action and to waive all claims or causes of action that they may have for costs relating to the Facility against any person who has entered into this Consent Decree and is in compliance with the obligations pursuant to it, subject to the same reservation of rights that DTSC reserves in Section XVI.48 (Plaintiffs' Reservation of Rights) and XVI.49.

**XVIII.   EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION**

56.      Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Each of the Parties expressly reserves any and all rights including, but not limited to, pursuant to Section 113(f)(2)-

(3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Facility against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of DTSC, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any person not a Party hereto to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

57.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement for purposes of any applicable laws, including, but not limited to, Section 113(f)(2) of CERCLA, 42 U.S.C § 9613(f)(2), and that each Settling Defendant, as of the Consent Decree Effective Date, resolved its liability to Plaintiffs within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) and is entitled, as of the Consent Decree Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. 9613(f)(2) or as may be otherwise provided by law, for the Matters Addressed in this Consent Decree.

58.     The Parties further agree, and by entering this Consent Decree this Court finds, that the Amended Complaint filed by Plaintiffs in this action is a civil action, and that this Consent Decree constitutes a judicially-approved settlement under federal law and good faith settlement under sections 877 and 877.6 of the California Civil Procedure Code.  Pursuant to California Civil Procedure Code section 877 and 877.6, upon entry, this Consent Decree shall bar any further claims against the Settling Defendants pursuant to which each Settling Defendant has, as of the Consent Decree Effective Date, resolved liability to the Plaintiffs.

59.     Each Settling Defendant must, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify DTSC in writing no later than sixty (60) calendar days prior to the initiation of such suit or claim.

60.     Each Settling Defendant must, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing DTSC within fifteen (15) calendar days after service of the complaint on such Settling Defendant.  In addition, each Settling

Defendant must notify DTSC within fifteen (15) calendar days after service or receipt of any

Motion for Summary Judgment and within ten (10) calendar days after receipt of any order from

a court setting a case for trial.

61.     <u>Res Judicata and Other Defenses</u>.  In any subsequent administrative or judicial

proceeding initiated by DTSC for injunctive relief, recovery of response costs, or other relief

relating to the Facility, Settling Defendants shall not assert, and may not maintain, any defense or

claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion,

claim-splitting, or other defenses based upon any contention that the claims raised by DTSC in

the subsequent proceeding were or should have been brought in the instant case; provided,

however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set

forth in Section XV.46 (Covenants by Plaintiffs).  Settling Defendants shall not assert, and may

not maintain, any defense based on the contention that such claims should have been brought in

the instant case and/or are res judicata or estopped by termination of the Order as provided in this

Consent Decree.  These res judicata limitations do not apply to any claim(s) Settling Defendants

may have against a party that is not a signatory to this Consent Decree or is not in compliance

with this Consent Decree.

62.     <u>No Admission of Liability</u>.  For the purposes of this Consent Decree, the Settling

Defendants admit none of the allegations of the Amended Complaint and the ISE Order.  DTSC

does not admit any liability or wrongdoing arising out of the allegations alleged in the Writ

Action.  This Consent Decree shall be admissible in any enforcement action brought by any Party

to enforce the terms of this Consent Decree, but may not be utilized by third parties against any

Party as proof of any allegations, findings, or conclusions contained herein.   The Parties agree

that nothing in this Consent Decree constitutes an admission of liability by any Settling Defendant

to DTSC or any other person or entity or an admission as to the recoverability of any alleged

costs.  Further, no Participating Party will be deemed an "operator" as that term is defined in

CERCLA and the Carpenter-Presley-Tanner Hazardous Substance Account Act (Cal. Health &

Safety Code §§ 25300 et seq.) based solely on its performance of the financial obligations set forth in this Consent Decree.

       63.   <u>No Waiver</u>.  Except as set forth in Section XVII.53 (Covenants by Settling Defendants) of this Consent Decree, nothing in this Consent Decree prejudices, waives, or impairs any right, remedy, or defense that any of the Settling Defendants may have in the instant case or any other or further legal proceeding, including, but not limited to, any application by the Participating Parties to have DTSC designated as the administering agency pursuant to California Health & Safety Code §§ 25260-25268.

**XIX.   <u>COMPLIANCE WITH APPLICABLE LAW</u>**

       64.   All activities undertaken by the Parties pursuant to this Consent Decree must be performed in accordance with the requirements of all applicable federal and state laws and regulations.

**XX.   <u>NOTICES AND SUBMISSIONS</u>**

       65.   Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions are considered effective upon receipt unless otherwise provided.  Written notice as specified herein constitutes complete satisfaction of any written notice requirement of the Consent Decree with respect to DTSC and the Settling Defendants, respectively.

//

//

//

//

//

//

//

As to Plaintiffs:

| | |
|---|---|
| Todd Sax<br>Deputy Director<br>Site Mitigation and Restoration Program<br>Department of Toxic Substances Control<br>California Environmental Protection Agency<br>1001 "I" Street<br>Executive Office/MS 25A<br>Sacramento, California   95814-2828<br>or<br>P.O. Box 806<br>Executive Office/MS 25A<br>Sacramento, California   95812-0806 | David Sadwick<br>Assistant Chief Counsel<br>Office of Legal Counsel<br>Department of Toxic Substances Control<br>California Environmental Protection Agency<br>1001 "I" Street<br>Mail Code MS-23A<br>or<br>P.O. Box 806<br>Executive Office/MS 23A<br>Sacramento, California   95812-0806 |
| Mary Gaspari<br>Engineering Geologist<br>Legacy Landfills Office<br>Department of Toxic Substances Control<br>California Environmental Protection<br>8800 Cal Center Drive, R1-5<br>Sacramento, California   95826-3200 | Kate M. Hammond<br>Deputy Attorney General<br>California Department of Justice<br>300 South Spring Street, Suite 1702<br>Los Angeles, CA   90013 |
| Thomas A. Bloomfield<br>Kaplan Kirsch Rockwell<br>1675 Broadway, Suite 2300<br>Denver, CO  80202 | |

As to Settling Defendants

| | |
|---|---|
| Daniel E. Vineyard, Common Counsel<br>1401 McKinney, Suite 1900<br>Houston, Texas  77010 | As to individual Settling Defendants<br>(Contact information as provided in Appendix A) |

66.    Upon ten (10) calendar days' notice to the other party, a party to this Consent Decree may substitute another person for an addressee named above to receive notifications or communications as required or provided for in this Consent Decree.

## XXI.    **RETENTION OF JURISDICTION**

67.    This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent

Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIV (Dispute Resolution).

## XXII.   APPENDICES

68.     The following appendices are incorporated into this Consent Decree:
"Appendix A-1" is a list of the Participating Parties.
"Appendix A-2" is a list of the Cashout Parties.
"Appendix A-3" is the Cashout Schedule.
"Appendix B" is the QSF Agreement.
"Appendix C" is the Payment Calculation for Cashout Parties
"Appendix D" is the Amount of Financial Assurance
"Appendix E" is the list of Settling Defendants and their addresses for service of process per Paragraph 78.

69.     This Consent Decree and its appendices constitute the entire agreement between DTSC and the Settling Defendants and may not be amended or supplemented except as provided for in this Consent Decree.

## XXIII.   MODIFICATION

70.     Any material modifications to this Consent Decree must be in writing, signed by DTSC and the Settling Defendants, and are effective only upon approval by the Court, subject to the following section.

71.     However, any such modification that does not affect the obligations of, or the protections afforded to, the Cashout Parties may be executed by the Participating Parties, only, and may be submitted to the Court for approval without the signatures of the Cashout Parties.

72.     Nothing in this Consent Decree alters the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXIV.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

73.     This Consent Decree must be lodged with the Court for a period of not less than thirty (30) calendar days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  DTSC reserves the right to withdraw

or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice and shall not challenge entry of this Consent Decree.

74.     Each Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless DTSC has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

75.     If for any reason the Court declines to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

76.     Settling Defendants need not file an answer or otherwise respond to the Amended Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

**XXV.  SIGNATORIES/SERVICE**

77.     Each undersigned representative of a Settling Defendant and DTSC certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party (including the entities listed in Appendix A-1 or Appendix A-2, as applicable) to this document.

78.     Each Settling Defendant agrees to accept service of process by mail to the address identified in Appendix E on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

79.     This Consent Decree may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

80.     Each of the parties to this Consent Decree represents and acknowledges that, in deciding whether to enter into and sign this Consent Decree, it has not relied on any statement of fact, statement of opinion, or representation, express or implied, made by any other party to this Consent Decree.  Each of the parties to this Consent Decree has investigated the subject matter of this Consent Decree to the extent necessary to make a rational and informed decision to execute it and has had the opportunity to consult independent counsel.

## XXVI.   TERMINATION OR AMENDMENT OF ISE ORDER AND DISMISSAL OF WRIT ACTION

81.     Within ten (10) calendar days of the Consent Decree Effective Date, DTSC will amend the ISE Order relating to the Facility to remove each of the Settling Defendants as a respondent (and, under Plaintiffs' Covenant Not to Sue set forth in Section  XV (Covenants by Plaintiffs) shall not amend the ISE Order going forward to re-add a Settling Defendant to the Order from which it was removed, subject to Plaintiffs' Reservation of Rights in Section  XVI). DTSC reserves the right to retain or amend the ISE Order as to any entity that is not a Party to this Consent Decree.  However, if all respondents named in the ISE Order become Settling Defendants, the ISE Order relating to the Facility will be dismissed.

82.     Within ten (10) calendar days of the Consent Decree Effective Date, Settling Defendants will dismiss the Writ Action with prejudice.

## XXVII.  FINAL SETTLEMENT AGREEMENT; NO THIRD-PARTY BENEFICIARIES

83.     This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the subject matter of the settlement here between Plaintiffs and Settling Defendants other than those expressly contained in this Consent Decree.  The Parties further acknowledge that this Consent Decree is solely for the benefit of the Parties and there are no express or implied third-party beneficiaries of it, including, but not limited to, the Permit permittees, now or in the future.

**XXVIII.   TERMINATION OF CONSENT DECREE**

84.     Subject to the Covenants by Plaintiff provided for in Section XV (Covenants by Plaintiffs), which shall survive termination, this Consent Decree shall terminate upon the occurrence of any of the following:

A.     DTSC's issuance of the Certificate of Completion in accordance with Section XI (Certificate of Completion) above; and/or

B.     DTSC determines, within its discretion that technological advances or other circumstances make continued post-closure operations and maintenance at the Facility unnecessary and not required by law.

**XXIX.   WASTE-IN DATABASE**

85.     Confidential. The Settling Defendants assert that their search mechanisms within the Database are the confidential work product of the Settling Defendants and are a trade secret. The Settling Defendants assert that access to the Database and the search process were and are made in the context of settlement negotiations and will not be prepared, owned, in the possession of, or retained by a public body, nor accessed by any public body other than DTSC.

86.     Limited Access. DTSC's access and use of such Database shall be for the limited purpose of pursuing recoveries from Non-Settlors, including, but not limited to, evaluating whether the waste allocated to a past or current subsidiary, division, sister-company, parent, or other affiliate of a Settling Defendant is included in the waste settled herein.  In the event DTSC receives a Public Records Act (PRA) request for a copy of the Database, including the methodology used to create the Database, DTSC must promptly notify Settling Defendants of the PRA Request prior to complying with the PRA request and provide Settling Defendants with the opportunity to object to disclosure.

87.     DTSC's Use of the Database.  The Settling Defendants agree that DTSC may be provided access to the Database upon notice to the Participating Parties of the documents or information DTSC is seeking.  The Participating Parties will first provide what is requested to DTSC.  In the event the Participating Parties are unable to provide the requested information to

DTSC, then DTSC will be provided limited access to the Database.  DTSC agrees to use the Database reasonably and in good faith and not to use the Database against any Settling Defendant, except as necessary to support the approval or defense of a settlement, including, but not limited to, bankruptcy settlements, for the Facility between DTSC and that party, and evaluating whether the waste allocated to a past or current subsidiary, division, sister-company, parent, or other affiliate of a Settling Defendant is included in the waste settled herein.

88.    Maintenance of Static Version of the Database as of July 1, 2023. Participating Parties shall maintain a static version of the Database as it existed as of July 1, 2023, and upon request, shall provide access to such version to DTSC, pursuant to the terms of this Consent Decree.

89.    The Database Is Not an Admission.  The Database cannot, for evidentiary purposes, be considered an admission or declaration against interest by any Settling Defendant, including any successors or affiliates.  The Settling Defendants make no representations regarding the accuracy of the manifests themselves.  This provision survives termination of this Consent Decree.  This paragraph shall not apply to DTSC's use of manifest images and the underlying documents and information used to create the Database.

90.    Database Limited to this Facility.  DTSC may use the Database with regard to the Facility only, and shall not use the Database or any information generated therefrom in connection with any other site or enforcement action at any other site.

91.    DTSC will not Share the Database with other State Agencies.  DTSC will not provide the Database, or any information generated therefrom, to any other state agency or any county or municipality within the State of California.  This provision shall not apply to (i) DTSC's use of the documents or information used to create the Database, (ii) the sharing of information from the Database with counsel of the California Attorney General's Office representing DTSC relating to the pursuit of third parties, (iii) the sharing of information from the Database with the California Environmental Protection Agency and the California Governor's Office for the purposes of reporting and/or complying with this Consent Decree, and

(iv) the sharing of information from the Database to otherwise further the purposes of this Consent Decree.  However, DTSC shall provide Participating Parties at least ten (10) calendar days prior notice before sharing information from the Database pursuant to subparagraph (iv) above.

**XXX.  PURSUIT OF THIRD PARTIES**

92.     <u>Identification and Pursuit of Non-Settlors</u>.  Participating Parties and DTSC (subject to its discretion) shall cooperate with respect to identifying and pursuing Non-Settlors, including any past owner or operator of the Facility.  The Participating Parties may assist DTSC, and DTSC may assist the Participating Parties with regard to:

A.     Identifying Non-Settlors by using the Database and other available information;

B.     Locating contact information for Non-Settlors and their successors;

C.     Communicating with Non-Settlors to urge contribution toward response costs at the Facility pursuant to terms mutually agreed upon by DTSC, Participating Parties, and the Non-Settlor; and

D.     Bringing one or more actions as necessary and appropriate against any Non-Settlor that chooses not to contribute toward response costs incurred by the Parties at and for the Facility.

E.     The extent to which DTSC assists the Participating Parties with respect to the pursuit of one or more of the Non-Settlors is subject to DTSC's discretion, based upon considerations such as: (i) the likelihood that a Non-Settlor will have sufficient funds to contribute toward the response cost; (ii) the expense of pursuing such Non-Settlor for such recovery; (iii) as set forth in Section XXX.94 (Non-Settlors) and XXX.95 (Enforcement and/or Litigation) below, the terms on which DTSC enters into settlements with Non-Settlors; and (iv) whether the pursuit of any Non-Settlor is consistent with public policy, equity, and fairness.

93.     <u>Resolution of Claims with Non-Settlors</u>.  The Participating Parties and DTSC, in its discretion, may contact Non-Settlors and offer to settle their potential liability for Matters

Addressed.  For settlements involving DTSC, and subject to Section  XXX.94 (Non-Settlors), the Parties anticipate that Non-Settlor settlements would be memorialized in a consent decree approved by DTSC, which, as provided by law, will provide for contribution protection and a covenant not to sue in exchange for the settlement amount paid.  Subject to Section XXX.94 (Non-Settlors), the Parties anticipate that the consent decree will also contain the same or similar reservation of rights as contained in Section  XVI.48 (Plaintiffs' Reservation of Rights).

94.     <u>Non-Settlors</u>.  DTSC retains enforcement discretion with regard to the terms on which it enters into settlements with Non-Settlors.  However, as to any Non-Settlors that do not settle with DTSC, the Participating Parties reserve all rights to pursue any such Non-Settlor.

95.     <u>Enforcement and/or Litigation</u>.  Non-Settlors may be pursued by DTSC, the Participating Parties, or both in their discretion, provided the terms offered are fair, equitable, reasonable, and consistent with public policy, considering the settlement terms offered to Cashout Parties or Participating Parties.  The Participating Parties may pursue all available causes of action and remedies against any Non-Settlor.  If any litigation or related actions against Non-Settlors are ongoing at the time this Consent Decree terminates, the Party or Parties that initiated the effort to pursue such Non-Settlors will control the ultimate resolution of such litigation or related actions.

96.     <u>Recoveries from Non-Settlors</u>.  The entirety of all such settlement funds recovered by the Participating Parties and/or DTSC must be contributed to the QSF.

97.     <u>Inquiries</u>.  All inquiries from Non-Settlors shall be directed to the Participating Parties as an initial matter.  DTSC and the Participating Parties will work together to respond to inquiries, including the resolution of volumetric challenges.

98.     <u>Coordination</u>.  DTSC and the Participating Parties will coordinate to facilitate the efficient and non-duplicative pursuit of any Non-Settlor.

99.     <u>Reimbursement for DTSC Costs Incurred Pursuing Non-Settlors</u>:  DTSC will be reimbursed for Future Response Costs incurred pursuing Non-Settlors as set forth in Section X (Reimbursement of DTSC Costs).

100.    <u>Reimbursement for Participating Parties Costs Incurred Pursuing Non-Settlors</u>: Participating Parties may submit requests for reimbursement to the Settlement Funds Manager for reasonable costs, including reasonable attorney's fees, incurred pursuing Non-Settlors from time to time, but no more frequently than every year after the Consent Decree Effective Date.

A.      Participating Parties must submit requests for reimbursement to DTSC and the Settlement Funds Manager.  DTSC will review such requests and approve or reject the requests.  DTSC may reject the request if DTSC determines the request does not reflect reasonable and legitimate costs of pursuing Non-Settlors.  After DTSC approves payment of all or a portion of a particular request for reimbursement, the Settlement Funds Manager must promptly take the appropriate steps to allow for payment to the Participating Parties.

B.      Following DTSC written approval of the request for reimbursement, the Settlement Funds Manager must pay the Participating Parties in accordance with the QSF Agreement.

SO ORDERED THIS 8TH DAY OF MARCH, 2024.


Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE


Party Signatures Pages on following pages.

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     THE CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and TOXIC SUBSTANCES CONTROL ACCOUNT

SIGNATURE:

NAME:     Todd Sax
(printed or typed)

TITLE:     Site Mitigation & Restoration Program Deputy Director
(printed or typed)

DATE:     8/21/2023
(printed or typed)

40

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     Aerojet Rocketdyne, Inc.

SIGNATURE:      _Scott T. Mikuen_

NAME:           Scott T. Mikuen
                _____
                (printed or typed)

TITLE:          President and Secretary
                _____
                (printed or typed)

DATE:           August 10, 2023
                _____
                (printed or typed)

DocuSign Envelope ID: 91B426C9-3C99-446E-9D2D-27F3EA7888F2

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     Aramark Uniform & Career Apparel, LLC

SIGNATURE:      *Edward Friedler*
                DAABD78121164AF...

NAME:           Ed Friedler
                (printed or typed)

TITLE:          Vice President
                (printed or typed)

DATE:           8/6/2023
                (printed or typed)

42

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:    Arris Solutions, Inc.

SIGNATURE:

NAME:          Michael Coppin
               (printed or typed)

TITLE:          Vice President, CommScope, Inc.
               (printed or typed)

DATE:           August 16, 2023
               (printed or typed)

43

1
2
3   The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA
4   DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES
    CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche
5   Facility.
6
7
8   PARTY NAME:        AT&T CORP.
9   SIGNATURE:         *Richard M. Parr*
10
11  NAME:              Richard M. Parr, Esq.
12                     (printed or typed)
13
    TITLE:             Assistant Vice President & Senior Counsel
14                     (printed or typed)
15
    DATE:              August 9, 2023
16                     (printed or typed)
17
18
19
20
21
22
23
24
25
26
27

44

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:          Atlantic Richfield Company

SIGNATURE:

NAME:          Nathan Block
          (printed or typed)

TITLE:          Managing Counsel
          (printed or typed)

DATE:          8/9/23
          (printed or typed)

45

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:   Bayer CropScience, Inc. as successor to Stauffer Chemical Company, by Stauffer Management Company LLC, as litigation agent

SIGNATURE:   *Charles N Elmendorf*

NAME:   Charles N Elmendorf
(printed or typed)

TITLE:   President, Stauffer Management Company LLC
(printed or typed)

DATE:   August 10, 2023
(printed or typed)

46

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.


PARTY NAME:      Beazer East, Inc.

SIGNATURE:

NAME:            Michael Slenska
                 (printed or typed)

TITLE:           President
                 (printed or typed)

DATE:            8/1/2023
                 (printed or typed)

47

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     Bio-Rad Laboratories, Inc.

SIGNATURE:      _____

NAME:           Timothy S. Ernst
                (printed or typed)

TITLE:          EVP & General Counsel
                (printed or typed)

DATE:           8/9/23
                (printed or typed)

48

1
2
3

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

4
5
6

PARTY NAME:     The Boeing Company

7
8

SIGNATURE:

9
10

NAME:     David Cohen
_____
(printed or typed)

11
12

TITLE:     Senior Counsel
_____
(printed or typed)

13
14

DATE:     July 12, 2023
_____
(printed or typed)

15
16
17
18
19
20
21
22
23
24
25
26
27

49

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:      BP Products North America Inc.

SIGNATURE:       _____

NAME:            __Phillip Allan Trajan Perez__
                 (printed or typed)

TITLE:           __Attorney-In-Fact_____
                 (printed or typed)

DATE:            __August 10, 2023_____
                 (printed or typed)

1

2

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

3

4

5

6

PARTY NAME:        Bridgestone Americas Tire Operations, LLC

7

SIGNATURE:        *Christopher R. Nicastro*
Christopher R. Nicastro (Aug 14, 2023 12:58 CDT)
_____

8

9

NAME:        Christopher R. Nicastro
_____
(printed or typed)

10

11

TITLE:        Executive Vice President and Chief Legal Officer
_____
(printed or typed)

12

13

DATE:        August 14, 2023
_____
(printed or typed)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

51

DocuSign Envelope ID: ACC179F5-792D-463C-AB10-CB04B29A6EAB

1
2
3

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

4

5

6
7
8

PARTY NAME:       Broadcom Inc. (f/k/a Broadcom Ltd., f/k/a Avago Technologies) on behalf of affiliate LSI Corporation as successor to or parent of Agere Systems, LSI Logic, and SEEQ Technology

9

SIGNATURE:      ⎛DocuSigned by:⎞
                KIRSTEN SPEARS
                ⎝18BE21B1BAA440C⎠
                _____

10
11

NAME:             KIRSTEN SPEARS
                _____
                (printed or typed)

12
13

TITLE:              CFO
                _____
                (printed or typed)

14
15

DATE:             Aug-10-2023
                _____
                (printed or typed)

16
17
18
19
20
21
22
23
24
25
26
27

DocuSign Envelope ID: 3F62F986-9BBE-4458-A29E-2CED85543A1F

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:        Chevron Oronite Company LLC

SIGNATURE:         _____

NAME:                 Scott M. Banks
                           (printed or typed)

TITLE:                 Assistant Secretary
                           (printed or typed)

DATE:                 2023-Aug-22 | 7:28 AM PDT
                           (printed or typed)

DocuSign Envelope ID: 3F62F986-9BBE-4458-A29E-2CED85543A1F

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     Chevron U.S.A. Inc.

SIGNATURE:


NAME:          Scott M. Banks
               (printed or typed)

TITLE:         Assistant Secretary
               (printed or typed)

DATE:          2023-Aug-22 | 7:28 AM PDT
               (printed or typed)

1  The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA
2  DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES
   CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche
3  Facility.

4

5

6  PARTY NAME:        CROWN Beverage Packaging, LLC

7

8

9  SIGNATURE:         _____

10

11 NAME:              MICHAEL J ROWLEY
                      (printed or typed)

12

13 TITLE:             asst GC / asst Sec
                      (printed or typed)

14

15 DATE:              8/5/23
                      (printed or typed)

16

17

18

19

20

21

22

23

24

25

26

27

1  The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA
2  DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES
3  CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche
   Facility.

4

5

6  PARTY NAME:      Delta Tech Service, Inc.

7
   SIGNATURE:       _____
8

9
   NAME:            _____Curt Johnson_____
10                  (printed or typed)

11
   TITLE:           _____President_____
12                  (printed or typed)

13

14 DATE:            _____8/10/23_____
                    (printed or typed)
15

16

17

18

19

20

21

22

23

24

25

26

27

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     The Dow Chemical Company

SIGNATURE:

NAME:           Johnathan DiMuro
                (printed or typed)

TITLE:          EH&S Remediation and Audit Director
                (printed or typed)

DATE:           8/7/2023
                (printed or typed)

57

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:      E. I. du Pont de Nemours and Company, now known as EIDP, Inc.

SIGNATURE:       _Thomas Warnock_
Thomas Warnock (Aug 21, 2023 16:25 EDT)

NAME:          Thomas Warnock
(printed or typed)

TITLE:          Associate General Counsel
(printed or typed)

DATE:          Aug 21, 2023
(printed or typed)

58

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     Evoqua Water Technologies LLC

SIGNATURE:      _____

NAME:           *Keith Buettner*
                (printed or typed)

TITLE:          *VP and Segment CFO ISS*
                (printed or typed)

DATE:           *8/7/23*
                (printed or typed)

59

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.


PARTY NAME:     Exxon Mobil Corporation

SIGNATURE:      _____

NAME:           Frank J. Messina
                _____
                (printed or typed)

TITLE:          Agent and Attorney-in-fact
                _____
                (printed or typed)

DATE:           8 - 9 . 2023
                _____
                (printed or typed)

60

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:      ExxonMobil Oil Corporation

SIGNATURE:

NAME:            Frank J. Messina
                 (printed or typed)

TITLE:           Agent and Attorney-in-fact
                 (printed or typed)

DATE:            8 - 9 - 2023
                 (printed or typed)

61

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     ExxonMobil Pipeline Company LLC

SIGNATURE:

NAME:           Saul Flota
                (printed or typed)

TITLE:          Vice President
                (printed or typed)

DATE:           8/8/2023
                (printed or typed)

62

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:   Mobil Exploration and Producing North America, Inc.

SIGNATURE:

NAME:   Caleb A. Bates
(printed or typed)

TITLE:   Agent and Attorney-in-fact
(printed or typed)

DATE:   8 August 2023
(printed or typed)

63

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:    Mobil Producing Texas & New Mexico Inc.

SIGNATURE:    _Coll A. Bat_

NAME:    Caleb A. Bates
         (printed or typed)

TITLE:    Agent and Attorney-in-fact
          (printed or typed)

DATE:    8 August 2023
         (printed or typed)

64

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:   FMC Corporation

SIGNATURE:

NAME:   Barry J. Crawford
(printed or typed)

TITLE:   VP, Operations
(printed or typed)

DATE:   July 24, 2023
(printed or typed)

65

DocuSign Envelope ID: 705A3DDB-B14D-400E-99B8-E0491FC23B8E

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     Ford Motor Company

SIGNATURE:
*DocuSigned by:*
*David J. Witten*
22B1409E26D7402...

NAME:           David J. Witten
                (printed or typed)

TITLE:          Assistant Secretary
                (printed or typed)

DATE:           Jul-28-2023
                (printed or typed)

1
2
3

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

4
5
6

PARTY NAME:        Gallo Glass Company

7
8

SIGNATURE:         _GN Dart_____

9
10

NAME:              Nigel Dart
                   _____
                   (printed or typed)

11
12

TITLE:             President, Secretary and Treasurer
                   (printed or typed)

13
14

DATE:              07/27/2023
                   (printed or typed)

15
16
17
18
19
20
21
22
23
24
25
26
27

67

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     General Electric Company

SIGNATURE:

NAME:           Andrew J. Thomas, Jr.
                (printed or typed)

TITLE:          Managing Director and Chief Counsel - Environmental
                (printed or typed)

DATE:           August 7, 2023
                (printed or typed)

68

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     Georgia-Pacific LLC

SIGNATURE:      _____

NAME:             TYE G. DARLAND
                (printed or typed)

TITLE:            SVP - GENERAL COUNSEL
                (printed or typed)

DATE:             8/10/2023
                (printed or typed)

DocuSign Envelope ID: 3F62F986-9BBE-4458-A29E-2CED85543A1F

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:      Texaco Downstream Properties Inc.

SIGNATURE:

NAME:        Gina K. Lee
             (printed or typed)

TITLE:       Assistant Secretary
             (printed or typed)

DATE:        2023-Aug-22 | 7:17 AM PDT
             (printed or typed)

70

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     Honeywell International Inc.

SIGNATURE:
DocuSigned by:

3742A97B2C4040D...

NAME:        Benny Dehghi
             (printed or typed)

TITLE:       VP, Corporate Global Remediation
             and Site Redevelopment
             (printed or typed)

DATE:        10-Aug-2023
             (printed or typed)

71

DocuSign Envelope ID: 96E718CD-C92A-48FE-9254-71B58E5223AA

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     HP Inc.

SIGNATURE:      *Cynthia Bright, DGC, Litigation & ECO*
                81517B99E939480...

NAME:           Cynthia Bright
                _____
                (printed or typed)

TITLE:          Deputy General Counsel and Chief Ethics & Compliance Officer, Litigation, Ethics & Compliance
                (printed or typed)

DATE:           8/7/2023
                _____
                (printed or typed)

72

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:        International Business Machines Corporation

SIGNATURE:         Edan Dionne       Digitally signed by Edan Dionne
                                      Date: 2023.08.07 13:23:02
                                      -04'00'

NAME:              Edan Dionne

TITLE:             VP, Environmental, Energy & Chemical Management

DATE:              7th August 2023

73

DocuSign Envelope ID: EE6FC129-6BF1-47D3-91B2-96C6BC4C6284

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     Intel Corporation

SIGNATURE:      *Patrice Tompkins-Everidge*
                A2C60F008FE640B...

NAME:           Patrice Tompkins-Everidge
                _____
                (printed or typed)

TITLE:          Global Director EHS
                _____
                (printed or typed)

DATE:           August 8, 2023
                _____
                (printed or typed)

1

2

3

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

4

5

6

PARTY NAME:     Levin Enterprises, Inc.

7

8

SIGNATURE:     *Chris Schaeffer*

9

10

NAME:     Christiaan J. Schaeffer
              (printed or typed)

11

12

TITLE:     President & CEO
              (printed or typed)

13

14

DATE:     7/28/2023
              (printed or typed)

15

16

17

18

19

20

21

22

23

24

25

26

27

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:    Lockheed Martin Corporation

SIGNATURE:

NAME:          Kevin Pearson
               _____
               (printed or typed)

TITLE:         Director, Environmental Remediation
               _____
               (printed or typed)

DATE:          08/08/2023
               _____
               (printed or typed)

1
2   The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA
3   DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES
    CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche
    Facility.

4       National Semiconductor (Maine), Inc.

5

6   PARTY NAME:   Schlumberger Technology Corporation as indemnitor of National Semiconductor
7                 (Maine), Inc. for the relevant environmental liabilities subject to the terms of this
                  Decree

8   SIGNATURE:    _____

9
10  NAME:         David B. Gooch
                  (printed or typed)

11
12  TITLE:        Legal Director, Transactions + Oversight
                  (printed or typed)

13
14  DATE:         August 10, 2023
                  (printed or typed)
15

16

17

18

19

20

21

22

23

24

25

26

27

77

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.


PARTY NAME:    New United Motor Manufacturing, Inc., a wholly-owned subsidiary of Toyota Motor Corporation

SIGNATURE:     _____

NAME:          Tobias S. Keller
               (printed or typed)

TITLE:         President
               (printed or typed)

DATE:          August 3, 2023
               (printed or typed)

78

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:    Northrop Grumman Systems Corporation

SIGNATURE:     *Heather Crofford*

NAME:          Heather M. Crofford
               (printed or typed)

TITLE:         President and Treasurer
               (printed or typed)

DATE:          August 14, 2023

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.


PARTY NAME:    PAC Operating Limited Partnership
               a Delaware limited partnership

By:            Palmtree Acquisition Corporation
               a Delaware corporation
               its general partner

NAME:          _Anne LaPlace_
               Anne LaPlace
               (printed or typed)

TITLE:         _First Vice President_
               (printed or typed)

DATE:          _August 15, 2023_
               (printed or typed)

80

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA
DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES
CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche
Facility.


PARTY NAME:      PACCAR Inc

SIGNATURE:       _Tacy K Hais (signature)_____

NAME:            _Tacy K Hais_____
                 (printed or typed)

TITLE:           _Corporate Counsel_____
                 (printed or typed)

DATE:            _7/14/2023_____
                 (printed or typed)

1

2

3

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

4

5

6

7

8

PARTY NAME:    Pacific Gas And Electric Company

SIGNATURE:

9

10

NAME:    Julius Cox
             (printed or typed)

11

12

13

TITLE:    Executive Vice President
             (printed or typed)

14

15

DATE:    August 8, 2023
             (printed or typed)

16

17

18

19

20

21

22

23

24

25

26

27

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     Phillips 66 Company

SIGNATURE:      _____

NAME:           _Dan Fischman_____
                (printed or typed)

TITLE:          _Manager, Remediation_ Management
                (printed or typed)

DATE:           _8/15/2023_____
                (printed or typed)

83

1  The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA
2  DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES
   CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche
3  Facility.

4

5

6  PARTY NAME:   PPG Industries, Inc. *having authorized AkzoNobel Coatings Inc*
7  *per Power of Attorney dated 10. August 2023*

8  SIGNATURE:

9  NAME:        Injen Zelles                              *JOAN GRIFFIN*
10             (printed or typed) Akzo Nuixel Coatings Inc.

11

12 TITLE:       Director Legal North America              *PRESIDENT*
               (printed or typed)

13

14 DATE:        10. August 2023
               (printed or typed)

15

16

17

18

19

20

21

22

23

24

25

26

27

84

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     The Procter & Gamble Manufacturing Company

SIGNATURE:      _____

NAME:           Andy Eckstein
                _____
                (printed or typed)

TITLE:          Senior Director & Assoc. Gen. Counsel
                _____
                (printed or typed)

DATE:           August 1, 2023
                _____
                (printed or typed)

85

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:   Raytheon Company

SIGNATURE:   _____

NAME:   _DAVID PLATT_____
(printed or typed)

TITLE:   _Vice President + Associate General Counsel
RTX Corporation_____
(printed or typed)

DATE:   _July 26, 2023_____
(printed or typed)

86

DocuSign Envelope ID: 8E00F897-880E-4128-B3B0-28983D7E407C

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:       Renesas Electronics America Inc.

SIGNATURE:        *Justin Becker*

NAME:             Justin Becker
                  (printed or typed)

TITLE:            VP, Deputy General Counsel
                  (printed or typed)

DATE:             08/09/2023
                  (printed or typed)

87

1
2
3
4
5

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

6   PARTY NAME:   Sanmina Corporation

7

8   SIGNATURE:

9
10  NAME:        Jure Sola
                 (printed or typed)

11
12  TITLE:       Chief Executive Officer
                 (printed or typed)

13
14  DATE:        July 13, 2023
                 (printed or typed)

15
16
17
18
19
20
21
22
23
24
25
26
27

DocuSign Envelope ID: 3606E3B1-970C-43B2-BC3E-EDC5C2A43E10

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:    Shell USA, Inc., formerly known as Shell Oil Company

SIGNATURE:


NAME:    Paige Todd
_____
(printed or typed)

TITLE:    Attorney-in-Fact
_____
(printed or typed)

DATE:    Aug 14, 2023
_____
(printed or typed)

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:    TE Connectivity Corporation

SIGNATURE:    *Harold G. Barksdale*
              DocuSigned by:
              1F8284EFFBE3446...

NAME:    Harold G. Barksdale
         (printed or typed)

TITLE:    Vice President
          (printed or typed)

DATE:    August 4, 2023
         (printed or typed)

90

1    The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA
2    DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES
    CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche
3    Facility.

4

5

6    PARTY NAME:     Thermo Fisher Scientific Inc.

7

8    SIGNATURE:

9    NAME:     *ROBERT  FETTER*
10             (printed or typed)

11

12    TITLE:     *VICE  PRESIDENT*
            (printed or typed)

13

14    DATE:     *JULY 31, 2023*
            (printed or typed)
15

16

17

18

19

20

21

22

23

24

25

26

27

91

DocuSign Envelope ID: 3F62F986-9BBE-4458-A29E-2CED85543A1F

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:      Union Oil Company of California

SIGNATURE:

DocuSigned by:

Kari H. Endries

35DD84F927F7407...

NAME:             Kari H. Endries
                 (printed or typed)

TITLE:            Vice President and Secretary
                 (printed or typed)

DATE:             2023-Aug-22 | 10:46 AM EDT

92

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:   Union Pacific Railroad Company

SIGNATURE:

NAME:   JAMES B. BOLES
(printed or typed)

TITLE:   VICE PRES. — LAW
(printed or typed)

DATE:   August 10, 2023
(printed or typed)

93

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     United States Steel Corporation

SIGNATURE:      *Brad A. Rimmel*
                Brad A. Rimmel (Aug 7, 2023 12:51 EDT)

NAME:            Brad A. Rimmel
                (printed or typed)

TITLE:           Senior Counsel
                (printed or typed)

DATE:           **Aug 7, 2023**
                (printed or typed)

94

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:     USS-UPI, LLC

SIGNATURE:     _Brad A. Rimmel_
               Brad A. Rimmel (Aug 7, 2023 12:51 EDT)

NAME:          __Brad A.Rimmel__
               (printed or typed)

TITLE:         __Senior Counsel__
               (printed or typed)

DATE:          __Aug 7, 2023__
               (printed or typed)

95

The Undersigned Party enters into this Consent Decree in the matter of CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT v. EXXON MOBIL CORPORATION, et al., relating to the Panoche Facility.

PARTY NAME:       United Technologies Corporation (n/k/a RTX Corporation)

SIGNATURE:        *Annette McNeely*

NAME:             *Annette McNeely*
                  (printed or typed)

TITLE:            VP, EH&S
                  (printed or typed)

DATE:             8/7/23
                  (printed or typed)

**APPENDIX A**

**SETTLING DEFENDANTS**

### Appendix A-1: Participating Parties

A Participating Party identifying one or more other entities per this Appendix is for settlement purposes only, and, outside of the context of this Consent Decree, shall not be treated as an admission of any business relationship with such other entity.

| | Participating Parties | Affiliates | Tonnage |
|---|---|---|---|
| 1. | E. I. du Pont de Nemours and Company (now known as EIDP, Inc.) | | 145,318.61 |
| 2. | Chevron U.S.A. Inc. | Chevron Environmental Health Inc.<br>Standard Oil Company of California<br>Texaco Inc.<br>Texaco Refining and Marketing Inc.<br>Gulf Oil Company<br>Mohawk Energy Inc. | 83,731.10 |
| 3. | Chevron Oronite Company LLC | Chevron Chemical Co. | (see Chevron U.S.A. Inc.) |
| 4. | PAC Operating Limited Partnership | Santa Fe Pacific Realty Corporation<br>Southern Pacific Development Company<br>Santa Fe Land Improvement Company<br>Catellus Development Corporation<br>Catellus Operating Limited Partnership<br>Palmtree Acquisition Corporation<br>Prologis, Inc.<br>Prologis, L.P.<br>Prologis California, Inc. | 30,946.02 |
| 5. | FMC Corporation | | 27,582.43 |
| 6. | Union Pacific Railroad Company | Southern Pacific Transportation Company; Pacific Motor Trucking Company | 22,447.35 |
| 7. | United States Steel Corporation | | 21,119.43 |
| 8. | Bayer CropScience, Inc., as successor to Stauffer Chemical Company | | 17,747.89 |

| 9. | Union Oil Company of California | Unocal Corporation<br>PureGro Company<br>La Floresta LLC | 12,572.69 |
|---|---|---|---|
| 10. | Ford Motor Company | | 11,831.77 |
| 11. | Phillips 66 Company | TOSCO Corporation | 8,474.74 |
| 12. | The Procter & Gamble Manufacturing Company | The Procter & Gamble Company<br>J.T. Baker Chemical Company | 4,485.55 |
| 13. | The Dow Chemical Company | Rohm and Haas Company,<br>Rohm and Haas Chemical, and<br>Union Carbide Corporation | 3,017.89 |
| 14. | Aerojet Rocketdyne, Inc. | Aerojet;<br>Aerojet General;<br>Aerojet Liquid Rocket Company;<br>Aerojet Ordnance Company;<br>Aerojet Strategic Propulsion Company;<br>Aerojet Solid Propulsion Company, Strategic Division; and<br>Aerojet Solid Propulsion Company, Tactical Division | 2,959.21 |
| 15. | Lockheed Martin Corporation | | 2,549.90 |
| 16. | Renesas Electronics America. | Integrated Device Technology, Inc. | 2,044.30 |
| 17. | Texaco Downstream Properties Inc. (for Getty Oil Company) | Getty Oil Company<br>Getty Refining & Marketing Inc.<br>Texaco Refining & Marketing Inc. | 1,412.02 |
| 18. | CROWN Beverage Packaging, LLC | Crown Cork & Seal Company, Inc. and Continental Can Co. | 649.80 |

**PARTICIPATING PARTIES
CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Northern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this 15 day of August, 2023.

PARTY Name: Aerojet Rocketdyne, Inc.

Signature: _Scott T. Mikuen_

By: _____ Scott T. Mikuen_____

Title: Senior Vice President, General Counsel & Secretary

Address: 1025 West NASA Boulevard
Melbourne, FL 32919
Telephone: 916-351-8524

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this __10__ day of __August__, 2023.

PARTY Name: _Bayer CropScience as successor in interest to Stauffer Chemical Company, by Stauffer Management Company LLC, as litigation agent_

Signature: _Charles N Elmendorf_

By: _Charles N Elmendorf_

Title: _President, Stauffer Management Company LLC_

Address: _1800 Concord Pike, A2C, Wilmington DE 19805_

Telephone: _302 886 6922_

DocuSign Envelope ID: 24B03675-35C6-4EC3-8364-AE58CA962096

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this 22nd day of August, 2023.

PARTY Name: Chevron Oronite Company LLC

Signature: _____

By: Scott M. Banks

Title: Assistant Secretary

Address: 6001 Bollinger Canyon Rd., San Ramon, CA 94583

Telephone: 925-842-1000

DocuSign Envelope ID: 24B03675-35C6-4EC3-8364-AE58CA962096

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this  22nd  day of      August      , 2023.


PARTY Name:    Chevron U.S.A. Inc.


Signature:    _[signature]_

By:        Scott M. Banks

Title:      Assistant Secretary

Address:    6001 Bollinger Canyon Rd., San Ramon, CA 94583

Telephone:    925-842-1000

**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this ___13___ day of ___August___, 2023.

PARTY Name: _Crown Beverage Packaging LLC_

Signature: _[signature]_

By: _MICHAEL  J  ROWLEY_

Title: _asst Sec / asst SC_

Address: _770 TOWNSHIP LINE ROAD  Yardley PA 19067_

Telephone: _215 557 3756_

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this  *8th*  day of  *August* , 2023.


PARTY Name:  THE DOW CHEMICAL COMPANY


Signature:  *Johnathan DiMuro*


By:  Johnathan DiMuro


Title:  EH&S Remediation and Audit Director


Address:  715 E Main Street, Midland, MI 48674


Telephone:  989-636-2020

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this_____day of_____, 2023.

PARTY Name:___E. I. du Pont de Nemours and Company (now known as EIDP, Inc.)_____

Signature:___*Thomas Warnock*_____
Thomas Warnock (Aug 21, 2023 16:25 EDT)

By: _____Thomas A. Warnock_____

Title: _____Associate General Counsel_____

Address: _____974 Centre Rd., Wilmington, DE 19805_____

Telephone: _____302-485-3053_____

**PARTICIPATING PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this _24_ day of _July_, 2023.

PARTY Name _FMC Corporation_

Name: _Barry J. Crawford_

By: _[signature]_

Title: _VP, Operations_

Address: _2929 Walnut St, Philadelphia, PA 19104_

Telephone: _215-299-6000_

DocuSign Envelope ID: 705A3DDB-B14D-400E-99B8-E0491FC23B8E

## PARTICIPATING PARTIES
## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this 28th day of July, 2023.


PARTY Name


Name: _____ Ford Motor Company _____

By: _____ *David J. Smith* _____
              22B1409E26D7402...

Title: _____ Assistant Secretary _____

Address: _____ One American Road
Dearborn, MI 48126 _____

Telephone: _____ 313-845-8476 _____

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this __8th__ day of __August__, 2023.


PARTY Name: __Lockheed Martin Corporation__

Signature: _____

By: __Kevin Pearson__

Title: __Director, Environmental Remediation__

Address: __PO Box 65003 Dallas, TX 75265-0003__

Telephone: __469-247-5683__

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this _14th_ day of _August_, 2023.

PARTY Name: _PAC Operating Limited Partnership_

By: Palmtree Acquisition Corporation, its general partner

Signature: _Anne LaPlace_

By: _Anne LaPlace_

Title: _First Vice President_

Address: _1800 Wazee Street, Suite 500, Denver, CO 80202_

Telephone: _303-567-5395_

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this _15_ day of _Avgust_, 2023.

PARTY Name: _Phillips 66_

Signature: _____

By: _Dan Fischman_

Title: _Manager, Remediation Management_

Address: _3900 Kilroy Airport Way, Suite 200, Long Beach CA 90806_

Telephone: _562-240-1553_

**PARTICIPATING PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this _____1st_____ day of _____August_____, 2023.


PARTY Name: _The Procter & Gamble Manufacturing Company_

Signature: _____

By: _Andy Eckstein_

Title: _Senior Director & Assoc. Gen. Counsel_

Address: _1 P&G Plaza, Cincinnati, OH 45202_

Telephone: _513-983-1046_

DocuSign Envelope ID: 340DD7F8-F75B-4783-93B3-9DAB4EE3068E

# CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this __9th__ day of __August__, 2023.

PARTY Name: __Renesas Electronics America Inc.__

Signature: _Justin Becker_
B732B2D526DA466...

By: __Justin Becker__

Title: __VP, Deputy General Counsel__

Address: __6024 Silver Creek Valley Road, San Jose, CA 95138__

Telephone: __1-408-432-8888__

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this  22nd  day of _____August_____ , 2023.


PARTY Name:  Texaco Downstream Properties Inc.


Signature: _____Gina K. Lee_____
909F8DD3C923449...


By: _____Gina K. Lee_____


Title: _____Assistant Secretary_____


Address:  6001 Bollinger Canyon Rd.,    San Ramon, CA 94583


Telephone:  925-842-1000

DocuSign Envelope ID: 24B03675-35C6-4EC3-8364-AE58CA962096

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this __22nd__ day of ____August____, 2023.


PARTY Name:__Union Oil Company of California_____

Signature: ____Kari H. Endries_____

By: _____Kari H. Endries_____

Title: _____Vice President and Secretary_____

Address: __6001 Bollinger Canyon Rd., San Ramon, CA 94583_____

Telephone: __925-842-1000_____

## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "<u>Consent Decree</u>"), between the Plaintiffs and the Participating Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this ___10th___ day of ___August___, 2023.


PARTY Name: _Union Pacific Railroad Co._

Signature: _____

By: _James B. Boles_

Title: _VP - Law_

Address: _1400 Douglas Street, Omaha, NE 68179_


Telephone: _(402) 544-5543_

**PARTICIPATING PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Participating Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Northern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Participating Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Participating Parties Consent Decree Acknowledgement, the undersigned together with any of its Affiliates shall be deemed a member of the class of Settling PRPs identified as Participating Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree as a Participating Party.

The below signatory is authorized to execute this Participating Parties Consent Decree Acknowledgement on behalf of the identified Participating Party and each of its Affiliates.

Dated this ___7th___ day of ___August___, 2023.

PARTY Name: ___United States Steel Corporation___

Signature: ___*Brad A. Rimmel*___
Brad A. Rimmel (Aug 7, 2023 16:03 EDT)

By: ___Brad A. Rimmel___

Title: ___Senior Counsel___

Address: _600 Grant Street, Room 1844, Pittsburgh, PA  15219_

Telephone: _330.418.3092_

**Appendix A-2: Cashout Parties**

A Cashout Party identifying and making a payment for one or more other entities per this Appendix is for settlement purposes only, and outside the context of this Consent Decree, shall not be deemed to be an admission of any business relationship with such other entity.

| | Cashout Parties | Affiliates |
|---|---|---|
| 1. | Exxon Mobil Corporation | |
| 2. | ExxonMobil Oil Corporation | |
| 3. | Mobil Exploration and Producing North America Inc. | |
| 4. | Mobil Producing Texas & New Mexico Inc. | |
| 5. | ExxonMobil Pipeline Company LLC | |
| 6. | Pacific Gas and Electric Company | |
| 7. | International Business Machines Corporation | |
| 8. | HP Inc. | |
| 9. | Gallo Glass Company | |
| 10. | Bridgestone Americas Tire Operations, LLC | Bridgestone Retail Operations, LLC |
| 11. | Levin Enterprises, Inc. | Levin Richmond Terminal Corporation |
| 12. | Georgia-Pacific LLC | |
| 13. | PACCAR Inc | Peterbilt Motors Company |
| 14. | BP Products North America Inc. | BP Lubricants USA Inc. |
| 15. | Atlantic Richfield Company | |
| 16. | New United Motor Manufacturing, Inc., a wholly-owned subsidiary of Toyota Motor Corporation | |
| 17. | Bio-Rad Laboratories, Inc. | |
| 18. | Aramark Uniform & Career Apparel, LLC | Red Star Industrial Service Red Star Linen Service L&N Uniform Supply Co. L&N Uniform Supply, LLC |
| 19. | National Semiconductor (Maine), Inc. | Fairchild Semiconductor Corporation Fairchild Semiconductor Corporation of California Fairchild Camera and Instrument, Inc. National Semiconductor Corporation Schlumberger Technology Corporation Fairchild Optoelectronics Fairchild Silicon Materials Division |
| 20. | United Technologies Corporation n/k/a RTX Corporation | United Technologies, United Technologies Corporation, United Technologies Co. |

| | | | |
|---|---|---|---|
| | | | Chemical Division<br>Goodrich Aerostructures<br>Inmont Corporation – Inmont Ink<br>Kaiser Aerospace/Kaiser Aerotech<br>Menasco, Inc.<br>Pratt & Whitney Rocketdyne<br>Rocketdyne, Rocketdyne Corp.,<br>Rocketdyne, Inc.<br>Rohr, Inc.<br>United Technologies Chemical Systems,<br>UnitedTechnologies CSD<br>United Technologies Chem Systems<br>U.T.C.C.S.D. |
| 21. | PPG Industries, Inc. | | Glidden C&R Division of SCM<br>Corporation<br>Glidden Division of SCM Corporation<br>Cherokee Mission Bay LLC<br>Glidden Coatings & Resins<br>The Glidden Company |
| 22. | Intel Corporation | | |
| 23. | Raytheon Company | | Raytheon Space and Airborne Systems;<br>Raytheon Systems Co.;<br>Hughes Aircraft Company; Hughes<br>Space and Communications Co.; Hughes<br>Research Lab; Hughes Helicopters;<br>Hughes Missile Systems |
| 24. | Sanmina Corporation | | Sanmina – SCI Corporation<br>Hadco Tech Center II<br>Hadco Corp Tech Center<br>Elexsys<br>Elexsys International<br>Sanmina/Elexsys International/Symtron<br>Corp<br>Symtron Corp Mountain View Division<br>Sanmina Corp<br>Symtron Corp.<br>Sanmina-SCI Corporation<br>Symiron Corp Palo Alto Division<br>Symtron Corp Redwood City Division<br>Sanmina – Plant #1<br>Diceon Electronics<br>Samgina Corp. |
| 25. | AT&T Corp. | | Pacific Bell Telephone Company<br>Pacific Bell Telephone Company *dba*<br>AT&T California<br>Pacific Telephone & Telegraph<br>Company<br>Pacific Telephone Company |

|  |  | Nevada Bell Telephone Company<br>AT&T Information Systems<br>AT&T Communications of California, Inc.<br>AT&T Communications of Nevada, Inc. |
|---|---|---|
| 26. | TE Connectivity Corporation | Tyco Electronics Corporation<br>Raychem Corporation<br>Deutsch Engineered Connecting Devices |
| 27. | Honeywell International Inc. |  |
| 28. | Beazer East, Inc. |  |
| 29. | General Electric Company | Intersil, Inc. |
| 30. | Delta Tech Service, Inc. |  |
| 31. | Northrop Grumman Systems Corp. | Northrop Grumman Systems Corp. on behalf of itself and its former Affiliates:<br><br>Litton Industries<br><br>Northrop Corporation<br><br>Westinghouse Electric Corporation (through contractual arrangement), but limited to IT Corp. transaction report entries (provided to DTSC on or about July 20, 2023) associated with:<br><br>401 E Hendy Ave, Sunnyvale, CA or P.O. Box 3499 or P.O. Box 499, Sunnyvale, CA |
| 32. | The Boeing Company | The Boeing Company; The Boeing Company Canoga Park; Douglas Aircraft Company; Douglas Aircraft Corporation; McDonnell Douglas Helicopter Company; Rockwell International; Rockwell International Corporation; Rockwell International Corp./El Segundo; Rockwell International Rocketdyne Division; McDonnell Douglas Aerospace; McDonnell Douglas Astronautics |
| 33. | Evoqua Water Technologies LLC | Xylem Inc.<br>(Evoqua merged with Xylem (NYSE:  XYL) as of May 24, 2023) |
| 34. | Broadcom Inc. | Broadcom Inc. (f/k/a Broadcom Ltd., f/k/a Avago Technologies) on behalf of affiliate LSI Corporation as successor to or parent of Agere Systems, LSI Logic, and SEEQ Technology |
| 35. | USS-UPI, LLC |  |

| 36. | Arris Solutions, Inc. (ASI) | CommScope Holding Company Inc. and subsidiaries, including, Arris Technology, Inc. |
|---|---|---|
| 37. | Thermo Fisher Scientific Inc. | |
| 38. | Shell USA, Inc., formerly known as Shell Oil Company | Equilon Enterprises LLC<br>Jiffy Lube International, Inc.<br>Pennzoil-Quaker State Company<br>Shell California Pipeline Company LLC<br>Shell Catalysts & Technologies Americas LP<br>Shell Catalysts & Technologies Company<br>Shell Catalysts & Technologies LP<br>Shell Chemical LP<br>Shell Downstream Inc.<br>Shell Energy North America (US), L.P.<br>Shell Exploration & Production Company<br>Shell Frontier Oil & Gas Inc.<br>Shell International Exploration and Production Inc.<br>Shell Legacy Holdings LLC<br>Shell Marine Products (US) Company<br>Shell Offshore Inc.<br>Shell Oil Products Company LLC<br>Shell Pipeline Company LP<br>Shell Pipeline GP LLC<br>SWEPI LLC<br>TMR Company LLC<br>Triton Diagnostics Inc.<br>Aera Energy LLC<br>Western Farm Service, Inc. |

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 6th day of August , 2023.


PARTY Name:   Aramark Uniform & Career Apparel, LLC

Signature: *Edward Friedler*
DocuSigned by:
DAABD78121164AF...


By:   Ed Friedler


Title:   Vice President


Address:   115 N. 1st Street, Burbank, CA  91502


Telephone: 818-929-9182

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this_day of_____, 2023.

PARTY Name

Name: _____Arris Solutions, Inc._____

By: _____
          Michael Coppin

Title: _____Vice President, CommScope, Inc._____

Address: _____

Telephone: _____

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this  9th day of  August            , 2023.

PARTY Name:  AT&T Corp.

Signature: *Richard M. Parr*
Richard M. Parr (Aug. 10, 2023 07:06 PDT)

By:  Richard M. Parr, Esq.

Title:  Assistant Vice President & Senior Counsel

Address:  4305 Lake Washington Blvd. NE, Ste. 2213, Kirkland, WA 98033

Telephone:  214-695-8443

**CASHOUT PARTIES
CONSENT DECREE ACKNOWLEDGEMENT**

 The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

 By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

 The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this _9th_ day of _August_ , 2023.

PARTY Name: _Atlantic Richfield Company_

Signature: _Nathan Block_

By: _Nathan Block_

Title: _Managing Counsel_

Address: _501 Westlake Park Blvd , Houston, TX  77079_

Telephone: _832-619-4789_

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 1st day of August , 2023.

PARTY Name

Name: Beazer East, Inc.

By: _Michael Slenska_

Michael Slenska

Title: President

Address: Beazer East, Inc.
c/o Three Rivers Management, Inc.
600 River Ave., Suite 200
Pittsburgh, PA 15212

Telephone: 412-208-0867

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Northern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this _10th_ day of _August_, 2023.

PARTY Name: _Bio-Rad Laboratories, In_

Signature: _Jm Cw_

By: _Timothy S. Ernst_

Title: _EVP & General Counsel_

Address: _1000 Alfred Nobel Drive, Hercules, CA 94547_

Telephone: _510-741-6005_

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 12th day of   July  , 2023.


PARTY Name        The Boeing Company


Name: _____David Cohen_____

By: _____

Title: _____Senior Counsel_____

Address: ____2201 Seal Beach Blvd., Seal Beach, CA 90740____

Telephone: ____(562) 797-1018_____

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 10th day of ____August____, 2023.


PARTY Name:___BP Products North America Inc._____


Signature: _____


By: ___Phillip Allan Trajan Perez_____


Title: __Attorney-In-Fact_____


Address: _340 Golden Shore, Ste 450, Long Beach, CA 90802_


Telephone: __949.290.5185_____

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 15th day of ____August____, 2023.

PARTY Name: Bridgestone Americas Tire Operations, LLC

Signature: *Christopher R Nicastro*
Christopher R. Nicastro (Aug 15, 2023 09:59 CDT)

By: Christopher R. Nicastro

Title: Executive Vice President and Chief Legal Officer

Address: 200 4th Avenue South, Nashville, TN 37201

Telephone: 615-937-1000

DocuSign Envelope ID: ACC179F5-792D-463C-AB10-CB04B29A6EAB

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 10th day of August, 2023.

PARTY Name: _Broadcom Inc._

Signature: _[signature]_

By: _Mark D. Brazeal_

Title: _Chief Legal & Corporate Affairs Officer_

Address: _1320 Ridder Park, San Jose, CA_

Telephone: _408-433-8000_

PANOCHE

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 10th day of August, 2023.

PARTY Name: DELTA TECH SERVICE, INC

Signature: _____

By: Curt Johnson

Title: PRESIDENT

Address: 391 WEST CHANNEL ROAD Benicia CA 94510

Telephone: (707) 745-2030

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this _7th_ day of _August_, 2023.

PARTY Name: _Evoqua Water Techologies LLC_

Signature: _[signature]_

By: _Keith Buettner_

Title: _VP and Segment CFO ISS_

Address: _210 Sixth Avenue, Suite 3300 Pittsburgh PA 15222_

Telephone: _724 - 772 - 1531_

## CASHOUT PARTIES
## CONSENT DECREE ACKNOWLEDGEMENT

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 9 day of August , 2023.


PARTY Name: Exxon Mobil Corporation


Signature: 


By: Frank J Messina


Title: Agent and Attorney-in-Fact

Address: 22777 Springwoods Village Pkwy
W3.2A.01_E&PS
Spring, TX 77389


Telephone: (718) 404-0652

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this  9  day of  AUGUST , 2023.

PARTY Name:  ExxonMobil Oil Corporation

Signature:

By:  Frank J Messina

Title:  Agent and Attorney-in-Fact

Address:  22777 Springwoods Village Pkwy
W3.2A.01_E&PS
Spring, TX 77389

Telephone:  (718) 404-0652

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this ___8___ day of ___August___ , 2023.


PARTY Name: ___ExxonMobil Pipeline Company LLC___

Signature: _____

By: _____Saul Flota_____

Title: _____Vice President_____

Address: ___22777 Springwoods Village Pkwy E3.5A.585 Spring, TX 77389___

Telephone: ___(832) 702-9550___

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this __8__ day of __August__, 2023.


PARTY Name: _Mobil Exploration and Producing North America Inc._

Signature: _____

By: _____ Caleb A. Bates _____

Title: _____ Agent and Attorney-in-fact _____

Address: _____ 22777 Springwoods Village Pkwy
W4.2AB.01_UPST US Conv
Spring, TX 77389 _____

Telephone: _____ (346) 337-0673 _____

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 8 day of August , 2023.

PARTY Name: Mobil Producing Texas & New Mexico Inc.

Signature: CAM A. Bts

By: Caleb A. Bates

Title: Agent and Attorney-in-fact

Address: 22777 Springwoods Village Pkwy
W4.2AB.01_UPST US Conv
Spring, TX 77389

Telephone: (346) 337-0673

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 27 day of July, 2023.

PARTY Name: Gallo Glass Company

Signature: GN Dart

By: Nigel Dart

Title: President, Secretary and Treasurer

Address: 605 S Santa Cruz, Modesto CA 95354

Telephone: (209)341-6550

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this _7th_ day of _August_, 2023.


PARTY Name: _General Electric Company_


Signature: _____


By: _Andrew J. Thomas, Jr._____


Title: _Managing Director and Chief Counsel - Environmental_


Address: _c/o Angelica Todd, 1 River Road, Schenectady, NY 12345-6000_


Telephone: _267-515-4165_

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this __10__ day of __AUGUST__, 2023.

PARTY Name: __GEORGIA-PACIFIC LLC__

Signature: _____

By: __TYE G. DARLAND__

Title: __SVP-GENERAL COUNSEL__

Address: __133 PEACHTREE RD.NE, ATLANTA, GA 30303__

Telephone: __404-652-4000__

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 10-00 day of ___August___, 2023.


PARTY Name:___Honeywell International Inc.___

Signature: ___[DocuSigned by 3742A97B2C4040D...]___

By: ___Benny Dehghi___

Title: ___VP, Corporate Global Remediation and Site Redevelopment___

Address: ___855 S Mint St Charlotte, NC 28202___

Telephone: ___(704) 625-6284___

DocuSign Envelope ID: 96E718CD-C92A-48FE-9254-71B58E5223AA

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 7 day of August , 2023.


PARTY Name        HP, Inc.


Name:  Cynthia Bright


By: _Cynthia Bright, DGC, Litigation & ECO_
81517B99E939480...


Title: Deputy General Counsel and Chief Ethics & Compliance Officer, Litigation, Ethics & Compliance


Address: 1501 Page Mill Road, Palo Alto, CA 94304


Telephone: (650) 857-1501

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this  7th   day of August        , 2023.


PARTY Name:  International Business Machines Corporation

Signature: Edan Dionne
Digitally signed by Edan Dionne
Date: 2023.08.07 13:22:29 -04'00'

By: Edan Dionne

Title: VP, Environmental, Energy & Chemical Management

Address: 1 North Castle Drive, Armonk, New York 10504

Telephone: 1-914-534-1378

DocuSign Envelope ID: EE6FC129-6BF1-47D3-91B2-96C6BC4C6284

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this ___8.00___ day of ___August___, 2023.


PARTY Name: ___Intel Corporation___

Signature: _Patrice Tompkins-Everidge_____
A2C60F008FE640B...

By: _Patrice Tompkins-Everidge_____

Title: _Global Director EHS_____

Address: _2200 Mission College Blvd, Santa Clara, CA 95054_

Telephone: _(408) 765-8080_____

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this  28  day of  July  , 2023.


PARTY Name:  Levin Enterprises, Inc.


Signature:  *Chris Schaeffer*


By:  Christiaan J. Schaeffer


Title:  President & CEO


Address:  402 Wright Ave., Richmond CA, 94801


Telephone:  (510) 307-4020

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 15th day of August, 2023.

National Semiconductor (Maine), Inc.

PARTY Name: Schlumberger Technology Corporation as indemnitor of National Semiconductor (Maine), Inc. for the relevant environmental liabilities subject to the terms of this Decree

Signature:

By: David B. Gooch

Title: Legal Director, Transactions & Oversight

Address: 5599 San Felipe, Houston, TX 77056

Telephone: (281) 988-1773

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 3rd day of August, 2023.

PARTY Name: New United Motor Manufacturing, Inc.

Signature:

By: Tobias S. Keller

Title: President

Address: c/o Visitacion Group LLC
650 California Street, Suite 1900
San Francisco, CA 94108

Telephone: 415-796-0709
(email: tkeller@visitaciongroup.com)

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 14th day of August          , 2023.


PARTY Name:   Northrop Grumman Systems Corporation

Signature:   _Heather Crofford_

By:   Heather M. Crofford

Title:   President and Treasurer

Address:   2980 Fairview Park Drive, Falls Church, VA 22042

Telephone:   703-280-2900

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 14th day of July , 2023.

PARTY Name

Name: PACCAR INC

By: Joseph U Stew

Title: Corporate Counsel

Address: 777 106th Ave. NE, Bellevue, WA 98004

Telephone: (425) 468-7442

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this __8__ day of __August__, 2023.

PARTY Name: __Pacific Gas & Electric Company__

Signature: _____

By: __Julius Cox_____

Title: __Executive Vice President__

Address: _____

Telephone: _____

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 10 day of August, 2023.

PARTY Name: PPG Industries Inc having authorized Akzo Nobel Coatings Inc. per Power of Attorney dated 10 August 2023

Signature: _____

By: Inge Welles                           John Griffin
Akzo Nobel Coatings Inc

Title: Director Legal North America        President

Address: 535 Marriott Drive, Nashville, 37214 TN

Telephone: 6298023999

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 26 day of July , 2023.

PARTY Name

Name: RAYTHEON COMPANY

By:

Title: Vice President + Associate General Counsel RTX Corporation

Address: 10 Farm Springs Road Farmington, Connecticut 06032

Telephone: 860-463-6584

**CASHOUT PARTIES
CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 12th day of July, 2023.

PARTY Name

Name: Sanmyna Corporation

By: _____

Jure Sola

Title: Chief Executive Officer

Address: 2700 N. First St.
San Jose, CA 95134

Telephone: (408) 964-3726

DocuSign Envelope ID: 3606E3B1-970C-43B2-BC3E-EDC5C2A43E10

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this____day of_____Aug 14, 2023_____, 2023.


PARTY Name:____Paige Todd____Shell USA, Inc., formerly known as Shell Oil Company

Signature:___Paige Todd_____

By: ___Paige Todd_____

Title: ___Attorney-in-Fact_____

Address: ___150 N. Dairy Ashford Rd., Houston, TX 77079____

Telephone: ___832-337-7092_____

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 23 day of August, 2023.


PARTY Name: TE Connectivity Corporation

Signature: Harold G. Barksdale

By: Harold G. Barksdale

Title: Vice President

Address: 1050 Westlakes Drive, Berwyn, PA 19312

Telephone: 610-893-9653

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this 31 day of JULY, 2023.

PARTY Name: THERMO FISHER SCIENTIFIC INC.

Signature:

By: ROBERT FETTER

Title: VICE PRESIDENT

Address: 168 THIRD AVENUE, WALTHAM MA 02451

Telephone: 248-943-8487

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Eastern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party.  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this  7th day of   August       , 2023.


PARTY Name:     USS-UPI

Signature: *Brad A. Rimmel*
Brad A. Rimmel (Aug 7, 2023 16:02 EDT)


By:      Brad A. Rimmel


Title:    Senior Counsel


Address: 600 Grant Street, Room 1844, Pittsburgh, PA  15219


Telephone:     330.418.3092

**CASHOUT PARTIES**
**CONSENT DECREE ACKNOWLEDGEMENT**

The undersigned Cashout Party wishes to join as a Party to that certain settlement and Consent Decree, to be approved and entered as an order by the United States District Court for the Northern District of California (as it may be amended from time to time, "Consent Decree"), between the Plaintiffs and the Cashout Party. Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Consent Decree.

By signing this Cashout Parties Consent Decree Acknowledgement, the undersigned, together with any of its Affiliates, shall be deemed a member of the class of Settling PRPs identified as Cashout Parties for all purposes under the Consent Decree and hereby accepts and agrees on behalf of itself and each of its Affiliates to be a Party to and bound by and to perform all of the terms and provisions of the Consent Decree applicable to it as a Cashout Party.

The below signatory is authorized to execute this Cashout Parties Consent Decree Acknowledgement on behalf of the identified Cashout Party and each of its Affiliates.

Dated this _7ᵗʰ_ day of _August_, 2023.

PARTY Name: _United Technologies Corporation (n/k/a RTX Corporation)_

Signature: _Annette McNeely_

By: _Annette McNeely_

Title: _VP, EH&S_

Address: _4 Farm Springs, Farmington CT 06032_

Telephone: _860-728-7624_

**Appendix A-3: Cashout Schedule**

| Cashout Parties | Tonnage | Share of Site Tonnage | Cashout Payment |
|---|---|---|---|
| Exxon Mobil Corporation; ExxonMobil Oil Corporation; Mobil Exploration and Producing North America Inc.; Mobil Producing Texas & New Mexico Inc.; ExxonMobil Pipeline Company LLC | 165,588.43 | 15.341912% | $45,799,596 |
| Shell USA, Inc., formerly known as Shell Oil Company | 69,594.38 | 6.447980% | $19,232,474 |
| Pacific Gas and Electric Company | 63,312.11 | 5.865922% | $17,516,255 |
| International Business Machines Corporation | 20,375.98 | 1.887852% | $5,616,537 |
| HP Inc. | 11,388.78 | 1.055180% | $3,134,516 |
| Gallo Glass Company | 9,728.18 | 0.901325% | $2,664,164 |
| Bridgestone Americas Tire Operations, LLC | 7,268.33 | 0.673417% | $1,983,463 |
| Levin Enterprises, Inc. | 3,342.98 | 0.309730% | $896,335 |
| Georgia-Pacific LLC | 3,245.24 | 0.300675% | $886,292 |
| PACCAR Inc | 2,864.73 | 0.265420% | $781,618 |
| New United Motor Manufacturing, Inc., a wholly-owned subsidiary of Toyota Motor Corporation | 2,437.47 | 0.225834% | $652,689 |
| Atlantic Richfield Company | 2,239.75 | 0.207515% | $611,359 |
| Bio-Rad Laboratories, Inc. | 2,023.46 | 0.187475% | $531,039 |
| Aramark Uniform & Career Apparel, LLC | 1,864.32 | 0.172731% | $494,235 |
| National Semiconductor (Maine), Inc. | 1,427.63 | 0.132271% | $392,284 |
| United Technologies Corporation n/k/a RTX Corporation | 1,357.11 | 0.125738% | $366,016 |
| PPG Industries, Inc. | 1,058.19 | 0.098042% | $286,631 |
| Intel Corporation | 834.45 | 0.077313% | $227,893 |
| Raytheon Company | 764.11 | 0.070796% | $202,487 |
| Sanmina Corporation | 720.09 | 0.066717% | $179,692 |
| AT&T Corp. | 360.42 | 0.033393% | $89,102 |
| TE Connectivity Corporation | 299.05 | 0.027708% | $76,620 |
| Honeywell International Inc. | 224.29 | 0.020781% | $59,897 |
| Beazer East, Inc. | 219.17 | 0.020307% | $59,078 |
| BP Products North America Inc. | 158.26 | 0.014663% | $43,199 |
| General Electric Company | 152.78 | 0.014155% | $32,779 |
| Delta Tech Service, Inc. | 106.83 | 0.009898% | $28,933 |
| Northrop Grumman Systems Corp. | 71.44 | 0.006619% | $18,114 |
| The Boeing Company | 47.54 | 0.004404% | $12,093 |
| Evoqua Water Technologies LLC | 16.85 | 0.001561% | $4,000 |
| Broadcom Inc. | 5.00 | 0.000463% | $1,252 |
| USS-UPI, LLC | 0.83 | 0.000077% | $212 |
| Arris Solutions, Inc. (ASI) | 0.65 | 0.000060% | $173 |
| Thermo Fisher Scientific Inc. | 0.11 | 0.000010% | $- |
| **TOTAL** | | **34.567958%** | **$102,881,027** |

**APPENDIX B**

**QUALIFIED SETTLEMENT FUND (QSF) AGREEMENT**

This Qualified Settlement Fund Agreement ("QSF Agreement" or "Agreement") is made effective upon entry of the Consent Decree to which it is attached as Appendix B between the Participating Parties and DTSC.

1. **Purpose**.  The purpose of this QSF Agreement is to govern the management and administration of the Qualified Settlement Fund ("QSF") and Non-Qualified Settlement Fund ("Non-QSF") for the Facility.

2. **Definitions**.  Unless otherwise defined herein, capitalized terms used in this QSF Agreement have the same meaning as the Consent Decree. For convenience, certain of those terms and definitions are restated as follows.  Additionally, the following terms used in this QSF Agreement have the following meanings:

   A. "Contingencies" means costs resulting from the circumstances identified in Paragraph 13 herein (Categorization of Costs as Expenses and Contingencies for QSF Disbursements) at the Facility and includes any other costs associated with post-closure or corrective action arising from or associated with the Facility that are not Expenses defined in Paragraph 2.D herein.

   B. "Disbursement Authorization" means a written authorization from DTSC authorizing the Settlement Funds Manager to disburse a specified amount of money from the Settlement Funds specifying the payee and the amount of each disbursement categorized as Expenses or Contingencies.

   C. "Disbursement Guidelines" means the separate guidelines prepared and provided by the Facility Operator, Participating Parties, and DTSC to the Settlement Funds Manager specifying (a) the account(s) authorized to receive disbursements from the Settlement Funds, (b) the method by which such funds will be disbursed to such specified accounts, and (c) the collection of any necessary tax documentation to avoid or reduce any applicable tax withholding (including backup

withholding). The Disbursement Guidelines and all amendments to those guidelines shall specify that no disbursement shall be made except as approved in a specific DTSC Disbursement Authorization.

D.   "Expenses" means costs resulting from the routine and non-routine tasks at the Facility identified in Paragraph 13 herein (Categorization of Costs as Expenses and Contingencies for Settlement Fund Disbursements) of this Agreement.

E.   "Facility Operator Costs" means any costs incurred by the Facility Operator in connection with or associated with the Facility Operator Work, including, but not limited to, field work, management, administration, accounting, reporting, insurance, costs of financial assurance mechanisms, recordkeeping, permitting, Permit Fees, taxes, dispute resolution costs, legal fees and costs, and/or penalties for violations of laws and regulations that occur after the Consent Decree Effective Date.  Among other things, Expenses and Contingencies are intended to cover any and all Facility Operator Costs.

F.   "Fiscal Year" means the twelve-month period beginning [September 1] each year and ending [August 31] each year.

G.   "ITELT's Post-Closure Insurance" means the two insurance policies issued by American International Specialty Lines Insurance Company to the IT Corporation to provide financial assurance for closure and post-closure for, among other sites, the Facility, including, Policy 4762403 and Policy 4760892.

H.   "Non-Principal" means the notional amount of the QSF based on the calculations identified in Paragraph 7 herein (Annual Calculation of QSF Non-Principal).

I.   "Non-Qualified Settlement Fund" or "Non-QSF" means a fund or account that shall be established by the Participating Parties for the Facility pursuant to the Consent Decree to hold and disburse any Settlement Funds received in connection with the Consent Decree that cannot be placed into the QSF, including, but not

limited to, revenue generated at the Facility if applicable, together with any investment returns on such Non-QSF funds.

J.     "Net ROI" means ROI (as defined herein) minus the Principal Inflation Adjustment, measured annually and cumulatively.

K.     "Principal" means the notional amount of the QSF based on the calculations identified in Paragraph 6 herein (Annual Calculation of QSF Principal).

L.     "Principal Inflation Adjustment" means the notional amount calculated annually to adjust the Principal amount to account for inflation or deflation during the past Fiscal Year based on an inflation index, selected by the Settlement Funds Manager, with the written consent of DTSC whose consent will not be unreasonably withheld or delayed.  Unless and until a different index is approved by DTSC, the inflation index will be the Bay Area Consumer Price Index for All Urban Consumers (CPI-U) published by the U.S. Department of Labor, Bureau of Statistics.  The Principal Inflation Adjustment shall be calculated as though no disbursements or replenishment payments were applied to Principal.

M.     "Qualified Settlement Fund" or "QSF" means the settlement fund for the Facility established by the Participating Parties pursuant to the Consent Decree and governed by this Agreement.

N.     "ROI" means any QSF investment returns including interest, dividends, other investment income, and any realized or unrealized changes in the values of investments in the QSF.

O.     "Settlement Funds" means the funds in the QSF and funds in the Non-QSF established pursuant to the Consent Decree.  Settlement Funds shall be managed, maintained, and used solely as provided in this Agreement.

P.     "Settlement Funds Manager" means the financial institution, selected and authorized by the Participating Parties, with the written consent of DTSC whose consent will not be unreasonably withheld or delayed, to hold, manage, invest,

and administer Settlement Funds, including (i) the QSF and its subaccounts and (ii) the Non-QSF and its subaccounts, as applicable.  The Settlement Funds Manager shall at all times have "custody" (as such term is used in Rule 15c3-3 promulgated under the Securities Exchange Act of 1934, as amended) of all funds in the QSF or Non-QSF including any subaccount thereof.  The Settlement Funds Manager is responsible for processing payments from Settlement Funds pursuant to DTSC Disbursement Authorizations.

3.     **Establishment of QSF and Non-QSF Accounts**.  Participating Parties have established a QSF and Non-QSF to fund the performance of the Facility Operator Work at the Facility, reimbursement of DTSC's Past Response Costs and Future Response Costs, and reimbursement of Participating Parties for costs incurred pursuing Non-Settlors pursuant to the Consent Decree.  For administrative efficiency, the QSF and Non-QSF for the Facility may be maintained as subaccounts in master QSF and Non-QSF accounts with the other ITELT sites (Vine Hill Complex, Montezuma Hills Facility, and Benson Ridge Facility), each with its own QSF and Non-QSF subaccounts, as applicable.

A.     Per the terms of this QSF Agreement and the Consent Decree, Participating Parties are responsible for establishing the accounts and selecting a Settlement Funds Manager.  Management of the funds in the QSF and the Non-QSF shall be governed by the terms of the Consent Decree and its Appendices, including this QSF Agreement.

B.     The QSF shall be used to hold, manage, and distribute Settlement Funds that are eligible for placement in a 468B settlement fund in accordance with applicable law.  Pursuant to Paragraph 5 (Deposits into the QSF and Non-QSF) herein, such funds in the QSF may include settlement payments made by Cashout Parties, contributions made by Participating Parties, funds collected from Non-Settlors, and any other monies received from other sources that are eligible to be placed in the QSF in accordance with applicable law.

C.      The Non-QSF shall be used to hold, manage, and distribute funds that are not eligible to be placed in the QSF in accordance with applicable law.

D.      No third party shall have access to the QSF or Non-QSF, except as provided herein.

4.      **Appointment of Settlement Funds Manager**.

A.      Proposal and Approval.  Paragraphs 24.C.3 and 24.E of the Consent Decree require the Participating Parties to propose a Settlement Funds Manager before establishing the QSF. Per the Consent Decree, DTSC's approval must not be unreasonably withheld, and be provided within fifteen (15) days after the Settlement Funds Manager is proposed by the Settling Defendants or as soon as possible thereafter.

B.      Appointment of Successor.  A successor Settlement Funds Manager must be proposed to DTSC by the Participating Parties within thirty (30) days after the resignation or removal of the Settlement Funds Manager. DTSC's approval must not be unreasonably withheld, and should be provided within fifteen (15) days after the Settlement Funds Manager is proposed by the Settling Defendants or as soon as possible thereafter.

C.      Participating Parties must timely provide information requested by DTSC, if any, regarding any proposed Settlement Funds Manager.

5.      **Deposits into the QSF and Non-QSF**. All deposits into the QSF shall specify the payer and type of payment, including:  (a) initial contributions from Participating Parties, (b) payments made by Cashout Parties, (c) settlements with Non-Settlors, (d) recoveries from ITELT's general liability insurers, (e) annual true-up payments from Participating Parties related to Expenses, as set forth in Paragraph 16.A herein, (f) annual replenishment payments from Participating Parties related to Contingencies, as set forth in Paragraph 16.B herein,  (g) contribution from Participating Parties, if any, for payment of DTSC's Past Response Costs as set forth in Paragraph 16.C, (h) payments to restore the Principal,

as set forth in Paragraph 16.D, or (i) other deposits to be specified, which shall be recorded in a ledger maintained by the Settlement Funds Manager. Deposits into the Non-QSF need only specify the payer and type of payment.

6.   **Annual Calculation of QSF Principal**.

    A.   Based on the ledgers of deposits into and disbursements from the QSF, Principal shall be calculated to include all of the funds identified in paragraphs (i) through (vi) below less the funds identified in paragraph (vii) below:

        i.   all initial contributions from Participating Parties made pursuant to the Consent Decree;

        ii.   all payments made by Cashout Parties pursuant to the Consent Decree except for twenty million dollars ($20,000,000) which is to be considered Non-Principal;

        iii.   the annual Principal Inflation Adjustment for the prior Fiscal Year;

        iv.   all replenishment payments in the past Fiscal Year from Participating Parties related to disbursements applied to Principal;

        v.   Principal Inflation Adjustments from all Fiscal Years before the prior Fiscal Year;

        vi.   all replenishment payments from all prior Fiscal Years from Participating Parties; and

        vii.   any disbursements for Contingencies or the use of the Principal by DTSC for use of financial assurance.

    B.   Principal shall be stated annually at the end of each Fiscal Year, showing the components of the annual calculations.

7.   **Annual Calculation of QSF Non-Principal.**

    A.   Based on the ledgers of deposits into and disbursements from the QSF, Non-Principal shall be calculated as the funds identified in paragraphs (i) through (iii)

below less the funds identified in paragraph (iv) below.  Non-Principal excludes Principal, ROI, and Net ROI:

    i.    all recoveries from settlements with Non-Settlors;

    ii.    all recoveries collected from ITELT's insurers, but only to the extent they are eligible for special tax treatment pursuant to IRS Code 468B-1. To the extent such funds are not eligible for special tax treatment pursuant to IRS Code 468B-1, the funds must be placed in the Non-QSF;

    iii.    all other monies contributed to the QSF, including but not limited to, twenty million dollars ($20,000,000) from the payments made by Cashout Parties pursuant to the Consent Decree and all true-up payments by Participating Parties; and

    iv.    disbursements for Expenses, to the extent such amounts are not deducted from notional cumulative Net ROI.

B.    Non-Principal shall be stated annually at the end of each Fiscal Year, showing the components of the annual calculations.

8.    **Annual Calculation of QSF and Non-QSF.**

At the end of each Fiscal Year, the Settlement Funds Manager shall calculate the balances of the QSF and Non-QSF as follows:  The values of the QSF and Non-QSF at the start of the prior Fiscal Year plus, for the prior Fiscal Year, amounts paid to the QSF and Non-QSF plus realized and unrealized returns on the QSF and Non-QSF (including interest, dividends, other investment income, and any realized or unrealized changes in the values of investments in the QSF) minus any amounts paid from the QSF and Non-QSF.

9.    **Calculation of QSF ROI and Net ROI**.  At the end of each Fiscal Year, the Settlement Funds Manager shall measure the QSF ROI, Principal Inflation Adjustment, and Net ROI.  Net ROI shall be stated both for the Fiscal Year and cumulatively.  Annual Net

ROI shall be calculated as the annual QSF ROI minus the Principal Inflation Adjustment. Cumulative Net ROI shall be reduced by disbursements for Expenses from Net ROI .

10. **Authorization by DTSC for Disbursements**. The Settlement Funds Manager shall make all authorized disbursements, first from the Non-QSF to the extent funds are available, and subsequently from the QSF.  Any such disbursements must only be made as specifically authorized and instructed pursuant to a Disbursement Authorization executed by DTSC.  Such authorization shall specify the payee and type of payment, (a) Expenses or (b) Contingencies, which shall be recorded in a ledger maintained by the Settlement Funds Manager.  Any requests for clarification or elaboration regarding a Disbursement Authorization must be directed to DTSC.

11. **Order of Use of Settlement Funds**.  Before DTSC issues a Disbursement Authorization for reimbursement of Facility Operator Costs to the Facility Operator from the Settlement Funds, the Facility Operator shall demonstrate that ITELT's Post-Closure Insurance is depleted for the Facility.  For Disbursement Authorizations from the Settlement Funds, Non-QSF funds shall be used before QSF funds, except as provided in Paragraph 12.E.

12. **Requests for Disbursements from the Settlement Funds**.

    A. The Facility Operator may submit requests for reimbursement to DTSC, with a copy to the Participating Parties, for Facility Operator Costs as set forth in Section VIII of the Consent Decree (Facility Operator Work and Funding and Reimbursement for Facility Operator Work).  The Facility Operator should indicate what portion of the request for reimbursement is Expenses or Contingencies.

    B. Participating Parties may submit requests for reimbursement to DTSC for reasonable costs incurred pursuing Non-Settlors as set forth in Paragraph 100 of the Consent Decree (Reimbursement for Participating Parties Costs Incurred Pursuing Non-Settlors).

C.   The Settlement Funds Manager may submit requests for reimbursement to DTSC, with a copy to the Participating Parties, for the costs of administering the Settlement Funds or advances for the payment of taxes.

D.   DTSC may submit Disbursement Authorizations to the Settlement Funds Manager for reimbursement of its documented Future Response Costs, with a copy to the Participating Parties, as set forth in Section X of the Consent Decree (Reimbursement of DTSC Costs) and reimbursement of Past Response Costs, as set forth in Section VI of the Consent Decree (Obligations of Participating Parties).  DTSC should indicate what portion of the authorized disbursement is Expenses or Contingencies.

E.   Where applicable statute or regulation requires or prohibits payment from a particular fund (e.g. for administration or taxes), funds will be reserved and only be drawn from the appropriate account.

13.   **Categorization of Costs as Expenses and Contingencies for QSF Disbursements.**
Expenses are costs in connection with the Facility resulting from the routine and non-routine tasks and categories identified below.  Contingencies are costs resulting from the circumstances identified below in connection with the Facility, and any other costs associated with post-closure or corrective action arising from or associated with the Facility that are not Expenses. Among other things, Expenses and Contingencies are intended to cover any and all Facility Operator Costs.

| Expenses. | Contingencies. |
| --- | --- |
| Facility management, operation, maintenance, inspections and monitoring pursuant to the Permit, administrative costs of the Facility Operator, insurance costs | Corrective action and repairs related to acts of nature or third parties that impact the integrity of the containment, conveyance, and monitoring systems such as wildfires, flooding and erosion (excluding corrective actions underway as of the Consent Decree Effective Date, which are Expenses) |
| Continued implementation of existing corrective actions (e.g., the corrective action management units (A, B and liquids management system), DBA-V and related | New corrective actions related to new releases of contaminants; enforcement activity; penalties |

| Expenses. | Contingencies. |
|---|---|
| systems)as of the Consent Decree Effective Date | |
| Permit fees, renewal costs, other permit fees, and permit compliance costs | Damage from seismic events equal to or greater than $3 million (in 2023 dollars) over any given 30-year period |
| Damage from seismic events less than $3 million (in 2023 dollars) over any given 30-year period | Any other events agreed as contingencies between DTSC and Participating Parties |
| Participating Parties' documented costs incurred pursuing Non-Settlors | DTSC's Future Response Costs related to Contingencies |
| Repair, maintenance, upgrades or replacement of all existing corrective action as of the Consent Decree Effective Date, containment, treatment, liner, conveyance and monitoring systems and all related infrastructure, office/storage trailers, trucks, tractors, software systems, computers, and other equipment | A DTSC work takeover |
| Entrance/site road repairs, maintenance and replacement (as needed) of fencing, gate, signage, cameras, and locks | |
| Costs of administering the QSF or Non-QSF | |
| Any taxes on the QSF or Non-QSF | |
| Costs to provide Financial Assurances | |
| DTSC's Future Response Costs related to any of the above Expenses, other than those covered by the Permit Fees | |

14.     **Annual Budgeting for Expenses.**

A.     No later than March 1st of each year, (a) the Facility Operator will submit to DTSC and the Participating Parties a draft annual budget for the Facility Operator Costs (including Expenses and Contingencies, as appropriate) for the upcoming Fiscal Year, (b) Participating Parties will submit to DTSC a draft annual budget for the upcoming Fiscal Year for reimbursement of costs incurred pursuing Non-Settlors, (c) DTSC will submit an estimate of its Future Response Costs that have been incurred but not yet reimbursed and for which DTSC anticipates submitting for reimbursement in the upcoming Fiscal Year, and (d) the Settlement Funds Manager will submit a draft annual budget to DTSC and the Participating Parties for the upcoming Fiscal Year for the costs for administration of the Settlement

Funds and taxes imposed on the Settlement Funds, if any.  As feasible, and for informational purposes only, the Facility Operator will also identify long-term maintenance items planned for the next five years, with cost estimates if available. Participating Parties will combine the budgets submitted pursuant to (a), (b), (c), and (d) into a consolidated draft annual budget and provide to DTSC.

B.  DTSC and the Participating Parties shall provide in writing any disputes regarding the consolidated draft annual budget within two (2) months of receipt of the draft consolidated annual budget, and shall use best efforts to address any disputes within four (4) months thereafter pursuant to the dispute resolution procedures of the Consent Decree.

C.  Participating Parties and DTSC shall use best efforts to finalize the annual budget before the start of each Fiscal Year, and the Facility Operator, DTSC and Participating Parties shall use best efforts to adhere to such budget.

15. **Calculations for Eligible Withdrawals from the QSF for Expenses**.  Within two (2) months after each Fiscal Year by October 31st, the Participating Parties, based on information from the Settlement Funds Manager, shall calculate Non-Principal and Net ROI amounts for the past Fiscal Year and report such calculations to DTSC.  In any given Fiscal Year, the total amount of Non-Principal and cumulative Net ROI as of the end of the prior Fiscal Year is available for Expenses, or for Contingencies if the Participating Parties so elect, subject to DTSC Disbursement Authorization.  Payments from the QSF for Expenses, or Contingencies if so elected, reduce the total Non-Principal and cumulative Net ROI, as applicable.  Any disbursement amounts for Contingencies which Participating Parties elect to reduce Non-Principal or Net ROI shall be treated as Expenses and shall not reduce Principal or be subject to replenishment payment calculations.

16. **Participating Parties' True-Up Obligations**.

A.   The Participating Parties must make annual true-up payments into the QSF for any shortfall between (i) Non-Principal plus cumulative Net ROI at the end of the prior Fiscal Year and (ii) Expenses budgeted for the current Fiscal Year (except to the extent ITELT's Post-Closure Insurance for the Facility is available to pay such Expenses).

B.   The Participating Parties must make annual replenishment payments into the QSF equal to the total disbursements applied to Principal over the past Fiscal Year.

C.   If the amount available in the Settlement Funds other than Principal is not sufficient to reimburse DTSC for the second payment of its Past Response Costs, Participating Parties must make a payment into the QSF in an amount sufficient to pay DTSC for the second payment.

D.   At the end of the fifth (5th) Fiscal Year, and once every five (5) Fiscal Years thereafter, the Participating Parties shall compare the combined balance of the Settlement Funds to the Principal amount and provide in writing those values and underlying supporting information to DTSC.  If, as of the end of that Fiscal Year, the balance of the Settlement Funds is less than the Principal amount (including the amounts paid into the Principal and the cumulative Principal Inflation Adjustment ), the Participating Parties must pay the difference into the QSF. pursuant to Paragraph 16.F.

E.   Based on information from the Settlement Funds Manager, with a copy of such information to DTSC, the Participating Parties shall be responsible for calculating (i) the annual amount of any true-up payment, as set forth in Paragraph 16.A, (ii) the annual Principal replenishment payment , as set forth in Paragraph 16.B, (iii) the amount of any obligation to make a payment into the QSF to pay DTSC's Past Response Costs, as set forth in Paragraph 16.C, and (iv) the amount, if any, measured at the end of every five (5) Fiscal Years by which the total balances of the QSF and Non-QSF are less than the Principal as set forth in Paragraph 16.D.

1    The Participating Parties shall make its calculations and supporting information

2    available to DTSC, which may dispute any such calculations and make its own

3    determinations of such obligations.

4    F.    Unless agreed to in writing by DTSC, the Participating Parties must make the

5    payments required by Paragraph 16.A, 16.B, and 16.D, no later than January 31st

6    for that current Fiscal Year.

7    17.    **Disputes Regarding Annual Budgets, True-Up, and Principal Replenishment**

8    **Obligations.**

9    A.    If the parties are unable to finalize a consolidated annual budget pursuant to the

10   dispute resolution procedure by December 1st of any Fiscal Year and the

11   Participating Parties would have a true-up payment obligation, as set forth in

12   Paragraph 16.A based on DTSC's determination of that obligation, Participating

13   Parties must make the true-up payment. If, after resolution, the Participating

14   Parties' true-up payment obligation is eliminated or reduced, Participating Parties

15   may submit a request for reimbursement of that amount from the Settlement

16   Funds to DTSC for approval. DTSC will promptly submit a Disbursement

17   Authorization in that amount to the Settlement Funds Manager.

18   B.    If the parties are unable to reach a resolution by December 1st of any Fiscal Year

19   regarding the amount of any annual true-up payment obligation, as set forth in

20   Paragraph 16.A, or annual Principal replenishment payment obligation, as set

21   forth in Paragraph 16.B, pursuant to the Dispute Resolution Procedure set forth in

22   the Consent Decree, the Participating Parties must pay DTSC's determination of

23   the annual true-up payment obligation and/or annual principal replenishment

24   payment obligation, as applicable, into the QSF. If, after resolution, the

25   Participating Parties annual true-up payment obligation and/or annual principal

26   replenishment payment obligation, as applicable, is eliminated or reduced,

27   Participating Parties may submit a request for reimbursement of that amount from

1    the QSF to DTSC for approval. DTSC will promptly submit a Disbursement

2    Authorization in that amount to the Settlement Funds Manager.

3    18.    **Calculations for Eligible QSF Withdrawals for Contingencies.**  At any given time, the

4    Principal is the amount available for Contingencies, only, except the Principal shall be

5    available to DTSC to use if it is accessing the Principal for financial assurance.  The

6    Participating Parties shall calculate annual Principal and the annual Principal Inflation

7    Adjustments based on the ledgers of deposits and disbursements, and an annual inflation

8    adjustment factor from the Settlement Funds Manager.  Payments from the QSF for

9    Contingencies reduce the amount of the Principal, unless such disbursements for

10    Contingencies are applied to Non-Principal or Net ROI, as set forth in Paragraph 15.

11    Replenishment payments, as set forth in Paragraph 16.B, increase the amount of the

12    Principal.

13    19.    **Unanticipated Intra-Year Funding Requirement.**  If at any time unanticipated

14    Expenses or Contingencies occur that cause the Settlement Funds Manager, the Facility

15    Operator, or DTSC to anticipate that available Settlement Funds will not be sufficient to

16    pay Facility Operator Costs or other required disbursements from the Settlement Funds,

17    such party shall provide notice to DTSC, the Facility Operator and the Participating

18    Parties, as applicable.  Upon such notice, the Facility Operator, Settlement Funds

19    Manager, or DTSC will provide an updated budget to reflect additional funds needed

20    before the next true-up or replenishment payment will be received pursuant to

21    Paragraph 16 of this QSF Agreement, including an allowance for the time needed to

22    receive and process such payment.  Participating Parties must, within 60 days (or sooner

23    if required for continued Facility Operator Work), pay to the QSF the additional funds as

24    a replenishment or true-up payment.  If the Participating Parties dispute the updated

25    budget, DTSC, the Participating Parties and the Facility Operator will meet and confer in

26    an effort to resolve the dispute.  In all instances, the Participating Parties must pay

27    amounts to the QSF to ensure sufficient funds to secure continued performance of all

Facility Operator Work and other required payments from the Settlement Funds. If, after resolution, the Participating Parties true-up or replenishment obligation is eliminated or reduced, Participating Parties may submit a request for reimbursement of that amount from the QSF to DTSC for approval. DTSC will promptly submit a Disbursement Authorization in that amount to the Settlement Funds Manager.

20.   **Authority/Control of Disbursements**. Notwithstanding any statement to the contrary herein, no disbursement shall be made from the Settlement Funds without a written Disbursement Authorization by DTSC.

21.   **Timing of Disbursement Requests**. Upon receipt of a Disbursement Authorization, the Settlement Funds Manager shall pay the amount approved by DTSC from the Settlement Funds to such designated payee's accounts, as specified in the Disbursement Guidelines, as promptly as reasonably practicable.  The Settlement Funds Manager shall maintain sufficient funds in instruments that allow for immediate access to funds anticipated to be needed for disbursements, based on the budget and other information from the Facility Operator and DTSC.

22.   **Disbursement Obligations**. The Settlement Funds Manager shall make disbursements hereunder solely from funds then on deposit in the Settlement Funds, and shall have no obligation to make any payments to the extent that sufficient funds are not available in the Settlement Funds.

23.   **Security Controls**. The Settlement Funds Manager shall establish and follow reasonable and effective internal control and security protocols to ensure that disbursements from the Settlement Funds are made only pursuant to and consistent with DTSC's Disbursement Authorizations.

24.   **Statements of Settlement Funds Balances and Activity**. Within fifteen (15) days after the end of each month, the Settlement Funds Manager shall make available to the Participating Parties and DTSC, and to any other interested parties from time to time designated by the Participating Parties, a monthly activity statement with respect to the

Settlement Funds for the prior month. The statement shall report, if any, all Settlement Funds investment activity and all receipts and disbursements of funds that took place since the date of the last Settlement Funds activity reflected in the prior monthly activity statement including QSF and Non-QSF balances and ROI.  Annual statements must report the following notional amounts:  Principal, Principal Inflation Adjustment, Net ROI, cumulative Net ROI, and Non-Principal, and any payments required to be made by the Participating Parties to QSF.  Notwithstanding the prior sentence, DTSC and the Participating Parties may, in the discretion of each, agree on a less frequent reporting schedule.

25.   **Certified Statements**. Within ninety (90) days after the end of each Fiscal Year, the Settlement Funds Manager shall distribute to the Participating Parties and DTSC and to any other interested parties from time to time designated by the Participating Parties a certified annual statement including QSF and Non-QSF balances, activity, ROI, and notional amounts as set forth in Paragraph 24 with respect to the Fiscal Year just ended. The certified annual statement shall reflect, without limitation, all material investment activity, any change in value of any investment of the Settlement Funds, all monies received into and disbursed from the Settlement Funds in the preceding calendar year and the following notional amounts:  Principal, Principal Inflation Adjustment, Net ROI, cumulative Net ROI, and Non-Principal. The Settlement Funds Manager is hereby authorized to hire, at the expense of the Settlement Funds, an outside firm satisfactory to DTSC, whose consent will not be unreasonably withheld or delayed, to prepare and certify such annual statements.

26.   **Taxes**.  The Settlement Funds Manager shall make arrangements for the filing of all required federal and state tax returns for the QSF and Non-QSF.  Any payments required to be submitted with federal and state tax returns shall be paid from the Settlement Funds, pursuant to a Disbursement Authorization by DTSC.  The Settlement Funds Manager hereby is authorized to hire, at the expense of the Settlement Funds, an outside firm to

prepare and to file such tax returns. The Settlement Funds Manager shall treat the QSF for federal and state tax purposes as a qualified settlement fund exempt from taxation by the Internal Revenue Service and the California Franchise Tax Board pursuant to Section 468B(g)(2) of the Internal Revenue Code of 1986 as amended, except as, and solely to the extent, otherwise required by law.

27.    **DTSC Reporting Requirements**. In addition to the Monthly Statements and Certified Annual reporting, the Settlement Funds Manager will cooperate to provide any information DTSC reasonably requires regarding the Settlement Funds.

28.    **Duty to Retain Records**. The Settlement Funds Manager shall maintain and preserve, consistent with generally accepted industry practices in the United States (unless DTSC approved in writing a different industry practice as proposed by the Settlement Funds Manager), accurate documentation and data (including, but not limited to, electronic records, books of account, correspondence, memoranda, receipts, and documentation of related systems and controls) pertaining to the performance of all services contemplated to be provided under this QSF Agreement. The provisions of this Paragraph 28 shall be applicable during the term of the QSF Agreement and for a period of three (3) years following the termination of the Settlement Funds.

29.    **Right to Inspect**. The Settlement Funds Manager shall permit DTSC or any Participating Parties or their authorized agents and representatives to have access to its books, records, offices and work locations upon reasonable prior notice and during normal working hours to examine, reproduce and retain copies of all relevant documentation and data and to interview relevant personnel, in order for DTSC and Participating Parties to verify, audit and monitor (i) the accuracy and propriety of the price of all services provided under this Agreement, (ii) the existence and effectiveness of the internal controls and other business practices relevant to the services provided and payments made with respect thereto hereunder, and (iii) the compliance with the terms of this Agreement.

B-17

30.    **No Authority to Conduct Business**. The purpose of the Settlement Funds is limited to the matters set forth herein. This Agreement does not confer upon the Settlement Funds Manager any authority to conduct business on behalf of or in the name of the Participating Parties or any other party hereto or, except to the extent expressly provided herein, to act in the capacity as an agent or representative of any party hereto or their respective affiliates.

31.    **Alterations, Amendments and Replacement**.  This QSF Agreement may be altered, amended, or replaced from time to time only by an instrument in writing executed by DTSC and the Participating Parties. Any such alteration, amendment, or replacement shall not require Court approval. Once fully executed, the Participating Parties shall file notice of the modification with the Court. The modification shall not be effective until notice is filed with the Court.  Notwithstanding the foregoing, no such alteration, amendment, or revocation may conflict with or modify in any respect the obligations of the respective parties under the Consent Decree.

32.    **Survival**.  The QSF and Non-QSF may survive the termination of the Consent Decree. After the termination of the Consent Decree, DTSC may terminate the QSF or Non-QSF with written notice to the Participating Parties. Upon termination, any remaining funds in the QSF and Non-QSF shall be, and shall remain, the property of the State of California and shall be used solely for post-closure operations and/or environmental response and/or remedial actions for the Facility to the extent necessary.

33.    **Interests Not Assignable or Subject to Claims of Creditors**.  The interest of any Party in the QSF or Non-QSF shall not be subject to attachment or assignment or be subject to the claims of any creditor of any Party.

34.    **Notices**.  Whenever, under the terms of this QSF Agreement, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All

notices and submissions are considered effective upon receipt unless otherwise provided.

Upon ten (10) calendar days' notice to the other party, a party to the Consent Decree may

substitute another person for an addressee named above to receive notifications or

communications as required or provided for in this QSF Agreement. Written notice as

specified herein constitutes complete satisfaction of any written notice requirement of the

QSF Agreement with respect to DTSC and the Participating Parties, respectively.

As to Plaintiffs:

| | |
|---|---|
| Todd Sax<br>Deputy Director<br>Site Mitigation and Restoration Program<br>Department of Toxic Substances Control<br>California Environmental Protection<br>Agency<br>1001 "I" Street<br>Executive Office/MS 25A<br>Sacramento, California   95814-2828<br>or<br>P.O. Box 806<br>Executive Office/MS 25A<br>Sacramento, California   95812-0806 | David Sadwick<br>Assistant Chief Counsel<br>Office of Legal Counsel<br>Department of Toxic Substances<br>Control<br>California Environmental Protection<br>Agency<br>1001 "I" Street<br>Mail Code MS-23A<br>or<br>P.O. Box 806<br>Executive Office/MS 23A<br>Sacramento, California   95812-0806 |
| Mary Gaspari<br>Engineering Geologist<br>Legacy Landfills Office<br>Department of Toxic Substances Control<br>California Environmental Protection<br>8800 Cal Center Drive, R1-5<br>Sacramento, California   95826-3200 | Kate M. Hammond<br>Deputy Attorney General<br>California Department of Justice<br>300 South Spring Street, Suite 1702<br>Los Angeles, CA   90013 |
| Thomas A. Bloomfield<br>Kaplan Kirsch Rockwell<br>1675 Broadway, Suite 2300<br>Denver, CO  80202 | |

As to Participating Parties:

| | |
|---|---|
| Daniel E. Vineyard, Common Counsel<br>1401 McKinney, Suite 1900<br>Houston, Texas 77010 | Panoche Joint Defense Group c/o<br>Daniel E. Vineyard, Common Counsel<br>1401 McKinney, Suite 1900<br>Houston, Texas 77010 |

# APPENDIX C

## PAYMENT CALCULATION FOR CASHOUT PARTIES

Each Cashout Party shall pay a cashout amount to the QSF based on the following calculation:

| Ref. | Item | Description | Amount |
|------|------|-------------|--------|
| **(A)** | **Basis** | **DTSC's Cost Calculation for All IT Sites** | **$301,489,836** |
| **(B)** | Facility | DTSC's Cost for the Facility | $151,676,518 |
| **(C)** | *Subtract* | ITELT's Remaining Post-Closure Insurance for the Facility as of FY 2023 (4/30) | $1,654,203 |
| **(D)** | **Net** | **Adjusted Facility Costs [(B)-(C]** | **$150,022,315** |
| **(E)** | Tonnage | Total Tonnage for the Facility | 1,079,320.66 |
| **(F)** | Tons | Tonnage for Cashout Party | # Tons |
| **(G)** | Share % | Party's Share of Total Tonnage | [((F)/(E)] % |
| **(H)** | Share $ | Party's Share of Facility Costs | $ [(D)x(G)] |
| | Subtract | Party's CERCLA Recoverable Expenses | $# RE |
| | Net Share $ | Party's Share Net of Recoverable Exp. | (H) = $ [(D)x(G)] – $# RE |
| **(I)** | Premium | DTSC's Cashout Premium Percentage | **100%** |
| **(J)** | $ w/ Prem. | Net Share with Premium | $ [(H)x(1+I)] |
| **(K)** | Basis | DTSC's Past Oversight Costs for All IT Facilities | $2,000,000 |
| **(L)** | Facility Share | DTSC's Past Oversight Costs for the Facility | $619,866 |
| **(M)** | Share $ | Party's Share of Oversight Costs | $ [(G)x(L)] |
| **(N)** | **Cashout $** | **Cashout Amount** | **$ [(J) + (M)]** |

C-1

**APPENDIX D**

**AMOUNT OF FINANCIAL ASSURANCE**

The Facility's Financial Assurance amount is calculated as follows:

| Ref. | Item | Description | Amount |
|------|------|-------------|--------|
| **(A)** | **Basis** | **Initially, Financial Assurance amount per the Permit as stated in DTSC's Summary of Financial Responsibility Findings, July 28, 2016, and then as revised per this Appendix D\*** | **$28,037,465** |
| **(B)** | *Subtract* | ITELT's Remaining Post-Closure Insurance for the Facility as of ITELT's Fiscal Year-End (4/30) 2023 | $1,654,203 |
| **(C)** | **Net** | **Supplemental Financial Assurance for the Facility to be Assured by the Facility Operator [(A)-(B)]** | **$26,383,262** |

It is agreed that future Financial Assurance calculations in Row (A) shall be made using a thirty- (30-) year forecast (using a present value calculation if not inconsistent with then-existing state statutes and regulations). Such calculation shall be made in conjunction with Permit renewals, expected every ten (10) years, and at other times per the then-existing regulations that apply to Financial Assurance. Such calculations in Row (A) shall use the then-existing regulations that apply to Financial Assurance for Post Closure and Corrective Action, approved by DTSC. Row B shall also reflect the then-current values for ITELT's Remaining Post-Closure Insurance for the Facility (if any). Row C shall also incorporate the then-current values in Rows A and B.

# APPENDIX E

## SETTLING DEFENDANTS –ADDRESSES

| | Participating Parties | Addresses |
|---|---|---|
| 1. | E. I. du Pont de Nemours and Company (now known as EIDP, Inc.) | **Name of person or position for service and notices**:<br>Chemours Company FC, LLC<br>Corporate Remediation Group<br>1007 Market Street<br>Wilmington, DE 19801<br>ATTN: Sebastian Bahr<br><br>**With a copy to:**<br>Chemours Company FC, LLC<br>Legal - Environmental<br>1007 Market Street<br>Wilmington, DE 19801<br><br>Glynn, Finley, Mortl, Hanlon & Friedenberg, LLP<br>100 Pringle Avenue, Suite 500<br>Walnut Creek, CA 94596<br>Attn: Andrew Mortl<br><br>EIDP, Inc.<br>974 Centre Road<br>Building 735<br>Wilmington, DE 19805<br>Attn: Pat McGee |
| 2. | Chevron U.S.A. Inc. | **Name of person or position for service and notices**:<br>Ian Robb<br>**Title**:   Risk Management Specialist<br>**Address**: Chevron Environmental Management Company<br>6001 Bollinger Canyon Road<br>San Ramon, CA 94583<br>**Email**:  IanRobb@chevron.com<br><br>*With Copy to*:  Supervising Counsel Environmental and Safety Law<br>Chevron Environmental Management Company<br>6001 Bollinger Canyon Road<br>San Ramon, CA 94583 |

| 3. | Shell USA, Inc., formerly known as Shell Oil Company | **Name of person or position for service and notices**: Kim Lesniak, Managing Counsel – LSPTIP – Safety, Environment & Asset Management, Shell USA, Inc. **Address**: 150 N. Dairy Ashford, #E-0344J, Houston, TX 77079 **Phone**: (832) 337-4831 **Fax**: N/A **Email**: kim.lesniak@shell.com **Name of person or position for service and notices**: Carol M. Campagna, Manager SGW California, Shell Oil Products US **Address**: 20945 S. Wilmington Ave., Carson, CA 90810 **Phone**: (310) 816-2029 **Fax**: N/A **Email**: carol.campagna@shell.com **Name of person or position <u>for service of process only</u>**: C T Corporation System 330 North Brand Blvd., Suite 700, Glendale, CA 91203 |
| --- | --- | --- |
| 4. | PAC Operating Limited Partnership | **Name of person or position for service and notices**: General Counsel and Anne LaPlace, FVP/Senior Counsel Prologis, Inc. **Address**: 1800 Wazee Street, Suite 500, Denver, CO 80202 **Phone**: 303-567-5395 **Email**: alaplace@prologis.com and legalnotice@prologis.com Albert M. Cohen Loeb & Loeb LLP **Address:** 10100 Santa Monica Blvd., Suite 2200 Los Angeles, CA 90035 **Phone:** 310-282-2228 **Email:** acohen@loeb.com **For Service of Process:** |

| | | |
|---|---|---|
| | | CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N Sacramento, CA 95833-3505 |
| 5. | FMC Corporation | **Name of person or position for service and notices**: Barry J. Crawford Vice President, Operations **Address**: FMC Corporation 2929 Walnut Street Philadelphia, PA 19104 **Phone**: (215) 299-6237 **Fax**: (215) 299-5940 **Email**: Barry.Crawford@fmc.com  **Copies to**: Victoria W. Hollinger Assistant General Counsel, EHS and Operations FMC Corporation 2929 Walnut Street Philadelphia, PA 19104 **Phone:** (215) 299-5810 **Fax**: (215) 299-5940 Email: Victoria.Hollinger@fmc.com  Robert L. Hines Christopher Rendall-Jackson Farella Braun + Martel LLP One Bush Street, Suite 900 San Francisco, CA 94104 **Phone:** (415) 954-4400 **Fax:** (415) 954-4480 **Email:** rhines@fbm.com crendall-jackson@fbm.com |
| 6. | Union Pacific Railroad Company | **Name of person or position for service and notices**: Robert C. Bylsma **Address**: 24125 Aldine Westfield Road, 2nd Fl, Spring, TX 77373 **Phone**: (281) 350-7533 **Fax**: None **Email**: reblysma@up.com |
| 7. | United States Steel Corporation | **Name of person or position for service and notices**: Brad Rimmel |

| | | |
|---|---|---|
| | | **Address**: 600 Grant Street, Pittsburg, PA 15219<br>**Phone**:<br>**Fax**:<br>**Email**: BARimmel@uss.com |
| 8. | Bayer CropScience, Inc., as successor to Stauffer Chemical Company | **Name of person or position for service and notices**:<br>Charles Elmendorf, President, Stauffer Management Company LLC<br>**Address**:  1800 Concord Pike-A2C, Wilmington, DE 19850-5437<br>**Phone**: (302) 886-6922<br>**Fax**: None<br>**Email**:<br>charles.elmendorf@astrazeneca.com |
| 9. | Union Oil Company of California | **Name of person or position for service and notices**:<br>Ian Robb<br>**Title**:   Risk Management Specialist<br>**Address**: Chevron Environmental Management Company<br>6001 Bollinger Canyon Road<br>San Ramon, CA 94583<br>**Email**: IanRobb@chevron.com<br><br>*With Copy to*:  Supervising Counsel Environmental and Safety Law Chevron Environmental Management Company<br>6001 Bollinger Canyon Road<br>San Ramon, CA 94583 |
| 10. | Ford Motor Company | **Name of person or position for service and notices**:<br> Cassie Mayrand Burney, Manager<br>**Address**: 290 Town Center Drive, 8th Floor, Dearborn, MI 48126<br>**Phone**: (313) 701-8143<br>**Fax**: N/A<br>**Email**: cmayrand@ford.com*<br>*e-mail is preferred form of communication<br><br>**With copies to:**<br>Joseph Lagrotteria, Esq.<br>K&L Gates, LLP |

| | | | |
|---|---|---|---|
| | | | One Newark Center, 10th Floor<br>Newark, NJ 07102<br>(732) 742-2352<br>joseph.lagrotteria@klgates.com<br><br>Dorothy Laguzza<br>K&L Gates, LLP<br>One Newark Center, 10th Floor<br>Newark, NJ 07102<br>(347) 563-8696<br>dorothy.laguzza@klgates.com |
| 11. | Phillips 66 Company | | **Name of person or position for service and notices**:<br>Kathleen Weir Bertolatus, Managing Counsel, Environmental & Regulatory<br>**Address**:<br>Phillips 66 Company<br>2331 CityWest Boulevard, HQ-N1358<br>Houston, Texas  77042-2862<br>**Phone**: 832.765.1661<br>**Fax**: 832.765.0112<br>**Email**:<br>Kathleen.W.Bertolatus@p66.com<br><br>**with a copy to:**<br><br>James F. Thompson, Partner<br>Shook, Hardy & Bacon L.L.P.<br>2555 Grand Boulevard<br>Kansas City, Missouri 64108-2613<br>Phone:  816.474.6550<br>Fax:  816.421.5547<br>Email:  Jfthompson@shb.com |
| 12. | The Procter & Gamble Manufacturing Company | | **Name of person or position for service and notices**:<br>Nate Orosz, Assistant General Counsel, Legal – Global Health, Safety & Environmental<br>**Address**:<br>The Procter & Gamble Company<br>One Procter & Gamble Plaza, C9-139A, Cincinnati, OH 45202<br>**Phone**: + 1 (513) 983-4966<br>**Fax**:+ 1 (513) 712-0403<br>**Email**: orosz.ns@pg.com |

| 13. | The Dow Chemical Company | **Name of person or position for service and notices**: Weslynn Reed, Counsel<br>**Address**: 2211 H.H. Dow Way, Midland, MI 48674<br>**Phone**: 989.423.5564<br>**Fax**:<br>**Email**: wpreed@dow.com<br><br>**For Service of Process:**<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington DE 19801 |
| --- | --- | --- |
| 14. | Aerojet Rocketdyne, Inc. | **Name of person or position for notices provided per the consent decree**:*<br><br>**Address:**<br>Aerojet Rocketdyne, Inc.<br>c/o L3Harris Technologies, Inc.<br>Attn:  General Counsel<br>1025 West NASA Boulevard<br>Melbourne, FL  32919<br>**Phone:** 916-351-8524<br>**Fax:** 916-351-8610<br>**Email**: Leila.Bruderer@Rocket.com<br><br>* Note: For service of process, the registered agent for Aerojet Rocketdyne, Inc. is CT Corporation |
| 15. | Lockheed Martin Corporation | **Name of person or position for notices**:<br>Lockheed Martin Corporation<br>Attn: Kevin Pearson<br>Director, Environmental Remediation<br>**Address**: P.O. Box 650003<br>Dallas, TX, 75265-0003<br>Building 105 / MS L14-01<br>**Phone**: 469-247-5683<br>**Fax**: n/a<br>**Email**: kevin.pearson@lmco.com<br><br>**For Service:**<br>Todd W. Billmire |

E-6

| | | |
|---|---|---|
| | | Associate General Counsel, Corporate Environmental Safety & Health (ESH) Law, Lockheed Martin Corporation **Address:** 531 McAlway Rd., Charlotte, NC, 28211 **Phone:** 202-657-9898 **Email:** todd.billmire@lmco.com |
| 16. | Renesas Electronics America Inc. | **Name of person or position for service and notices**: John Jeter **Address:** 6024 Silver Creek Valley Road, San Jose, CA 95138 **Phone**: 408-482-0535 **Fax**: **Email**: john.jeter@renesas.com |
| 17. | Texaco Downstream Properties Inc. (for Getty Oil Company) | **Name of person or position for service and notices**: Ian Robb **Title**:   Risk Management Specialist **Address**: Chevron Environmental Management Company 6001 Bollinger Canyon Road San Ramon, CA 94583 **Email**:  IanRobb@chevron.com

*With Copy to*:  Supervising Counsel Environmental and Safety Law Chevron Environmental Management Company 6001 Bollinger Canyon Road San Ramon, CA 94583 |
| 18. | Chevron Oronite Company LLC | **Name of person or position for service and notices**: Ian Robb **Title**:   Risk Management Specialist **Address**: Chevron Environmental Management Company 6001 Bollinger Canyon Road San Ramon, CA 94583 **Email**:  IanRobb@chevron.com

*With Copy to*:  Supervising Counsel Environmental and Safety Law Chevron Environmental Management Company 6001 Bollinger Canyon Road |

| | | San Ramon, CA 94583 |
|---|---|---|
| 19. | CROWN Beverage Packaging, LLC | **Name of person or position for service and notices**: Michael J. Rowley, Assistant Corporate Secretary and Assistant General Counsel **Address**: CROWN Beverage Packaging, LLC 770 Township Line Road Yardley, Pennsylvania 19067 **Phone**: 215.552.3756 **Fax**: N/A **Email**: mike.rowley@crowncork.com  **with a copy to:** James F. Thompson, Partner Shook, Hardy & Bacon L.L.P. 2555 Grand Boulevard Kansas City, Missouri 64108-2613 Phone: 816.474.6550 Fax: 816.421.5547 Email: Jfthompson@shb.com |

| | **Cashout Parties** | **Addresses** |
|---|---|---|
| 20. | Exxon Mobil Corporation; ExxonMobil Oil Corporation; Mobil Exploration and Producing North America Inc.; Mobil Producing Texas & New Mexico Inc.; ExxonMobil Pipeline Company LLC | **Name of person or position for service and notices**: Frank Messina, Americas Superfund Manager  **Address:** 22777 Springwoods Village Pkwy., W3.2A.01_E&PS Spring, TX 77389 **Phone:** (718) 404-0652 **Email:** frank.j.messina@exxonmobil.com |
| 21. | Pacific Gas and Electric Company | **Name of person or position for service and notices**: Matthew G. Dudley, Sr. Environmental Counsel PG&E Law Department **Address**: 300 Lakeside Drive, Oakland, CA 94612 **Mailing Address:** P.O. Box 7442, San Francisco, CA 94120 **Phone**: (415) 264-9653 **Fax**: N.A. **Email**: Matthew.Dudley@pge.com |

E-8

| | | |
|---|---|---|
| 22. | International Business Machines Corporation | **Name of person or position for notices per Consent Decree:\*** <br> Brandon Ashby <br> **Address**: 8976 Wellington Rd., Manassas, VA 20109 <br> **Phone**: 720-397-5616 <br> **Fax**: N/A <br> **Email**: brandon.ashby@ibm.com <br><br> Kevin Olson <br> **Address**: 1 North Castle Drive, Armonk, NY 10504 <br> **Phone**: (347) 387-7342 <br> **Fax**: N/A <br> **Email**: kolson@us.ibm.com <br><br> \* Note: For service of process, the registered agent for International Business Machines Corporation is CT Corporation |
| 23. | HP Inc. | **Name of person or position for service and notices**: <br> Karen H. Davis <br> **Address**: 747 Constitution Drive, Suite 100, Exton, PA 19341 <br> **Phone**: 610-458-6702 <br> **Fax**: 610-458-7337 <br> **Email**: kdavis@foxrothschild.com |
| 24. | Gallo Glass Company | **Name of person or position for service and notices**: <br> **Address**: <br> Ton Law P.C. <br> 2450 Potomac Street <br> Oakland, CA 94602 <br> Attn: Peter Ton, Esq. <br><br> **Phone**: 510-725-5318 <br> **Fax**: n/a <br> **Email**: peter@tonlawpc.com |
| 25. | Bridgestone Americas Tire Operations, LLC | **Name of person or position for service and notices**: <br> Robert Boon, Assistant General Counsel−Environmental <br> **Address**:  200 4th Avenue South, Nashville, TN 37219 <br> **Phone**: 615-937-1000 <br> **Email**: boonrobert@bfusa.com |

| 26. | Levin Enterprises, Inc. | **Name of person or position for service and notices**: Steven R. Tekosky<br>**Address**:  Tatro Tekosky Sadwick LLP, 7083 Hollywood Blvd., 5th Floor, Los Angeles, CA  90028-8908<br>**Phone**: 213 – 761 - 2794<br>**Fax**:  213 – 225 - 7151<br>**Email**: stekosky@ttsmlaw.com<br><br>**Name of person or position for service and notices**: Christiaan J. Schaeffer<br>**Address**:  Levin Richmond Terminal Corporation, 402 Wright Avenue, Richmond, CA  94804<br>**Phone**: 510 – 307 - 4020<br>**Fax**:  510 – 236 - 0129<br>**Email**: cschaeffer@levinterminal.com |
|---|---|---|
| 27. | Georgia-Pacific LLC | **Name of person or position for service and notices**: John C. Bottini, Deputy General Counsel – EH&S Law & Strategy<br>**Address**: 133 Peachtree St. NE, Atlanta, Georgia 30303<br>**Phone**: 404-652-4883<br>**Fax**: N/A<br>**Email**: john.bottini@kochcc.com |
| 28. | PACCAR Inc | **Name of person or position for service and notices**: Steven R. Tekosky<br>**Address**:  Tatro Tekosky Sadwick LLP, 7083 Hollywood Blvd., 5th Floor, Los Angeles, CA  90028-8908<br>**Phone**: 213-761-2794<br>**Fax**:  213-761-7151<br>**Email**: stekosky@ttsmlaw.com<br><br>**Name of person or position for service and notices**: Tacy Hass<br>**Address**:  PACCAR Inc, 777 106th Ave. NE, Bellevue, WA  98004<br>**Phone**: 425-229-0443<br>**Email**: tacy.hass@paccar.com |
| 29. | Atlantic Richfield Company | **Name of person or position for service and notices**:<br>Scott McDonald, Liability Manager BP Remediation Management |

| | | | |
|---|---|---|---|
| | | | **Address:** 201 Helios Way, 3rd Floor Houston, Texas 77079 **Phone:** **Email:** Scott.McDonald2@bp.com<br><br>**With copy to:** Nathan Block, Managing Counsel BP Legal **Address:** 501 Westlake Park Blvd WL1 LR3 3.640B Houston, TX 77079 **Email:** Nathan.Block@bp.com |
| 30. | BP Products North America Inc. | | **Name of person or position for service and notices**: Scott McDonald, Liability Manager BP Remediation Management **Address:** 201 Helios Way, 3rd Floor Houston, Texas 77079 **Phone:** **Email:** Scott.McDonald2@bp.com<br><br>**With copy to:** Nathan Block, Managing Counsel BP Legal **Address:** 501 Westlake Park Blvd WL1 LR3 3.640B Houston, TX 77079 **Email:** Nathan.Block@bp.com |
| 31. | New United Motor Manufacturing, Inc., a wholly-owned subsidiary of Toyota Motor Corporation | | **Name of person or position for service and notices**: New United Motor Manufacturing, Inc. c/o Visitacion Group **Address**: 650 California Street, Suite 1900, San Francisco, CA 94108 **Phone**: (415) 796-0709 **Fax**: **Email**: tkeller@visitaciongroup.com |
| 32. | Bio-Rad Laboratories, Inc. | | **Name of person or position for service and notices**: Adam Pressman Associate General Counsel Bio-Rad Laboratories, Inc. **Address:** 1000 Alfred Nobel Drive Hercules, CA 94547 **Phone:** 510-741-6860 **Fax:** 510-741-5815 **Email:** adam_pressman@bio-rad.com |

| | | |
|---|---|---|
| 33. | Aramark Uniform & Career Apparel, LLC | **Name of person or position for service and notices**:<br>For Notices:<br>Aramark Uniform & Career Apparel, LLC<br>Attn:  Stephanie Walter, Legal Dept.<br>Vice President & Assistant General Counsel<br>115 N. 1st Street, Burbank, CA 91502<br>**Phone:** 818-257-4527<br>**Email:** Walter-Stephanie@aramark.com<br><br>**For Service of Process:**<br>C T Corporation System<br>330 N Brand Blvd, Suite 700<br>Glendale, CA 91203 |
| 34. | National Semiconductor (Maine), Inc. | **Name of person or position for service and notices**:<br>Dawn Greening, Remediation Manager<br>**Address**: Schlumberger Technology Corporation (as the indemnitor of National Semiconductor (Maine), Inc.<br>121 Industrial Boulevard<br>Sugar Land, Texas  77478<br>**Phone**: (281) 285-4000<br>**Fax**:<br>**Email**: dgreening@slb.com<br><br>**With a copy to:**<br>J. Tom Boer<br>Hogan Lovells US LLP<br>4 Embarcadero Center, Suite 3500<br>San Francisco, California  94111<br>4150374-2300 |
| 35. | United Technologies Corporation n/k/a RTX Corporation | **Name of person or position for service and notices**:<br>Matthew I Kaplan, Tucker Ellis LLP<br>**Address**:  515 S Flower St., 42nd Floor<br>Los Angeles, CA 90071<br>**Email:**<br>Matthew.kaplan@tuckerellis.com<br><br>David Platt, Vice President & Associate General Counsel, EH&S/Real Estate<br>RTX Corporation |

| | | |
|---|---|---|
| | | Office of General Counsel<br>10 Farm Springs Road, Farmington, CT 06032<br>david.platt@rtx.com |
| 36. | PPG Industries, Inc. | **Name of person or position for service and notices**:<br>Inge Wells, Director Legal North America<br>Akzo Nobel Inc.<br>AkzoNobel Legal Group<br>535 Marriott Drive, Suite 500<br>Nashville, TN 37212<br>**Phone:** 629 802 3999<br>**Fax:** 615-883-2439 or 615-883-2440 or 615-883-2441<br>**Email:** inge.welles1@akzonobel.com |
| 37. | Intel Corporation | **Name of person or position for service and notices:**<br>**Address:** Intel Corporation<br>2200 Mission College Blvd<br>Santa Clara, CA  95054<br>Attn: April Miller-Boise, Chief Legal Officer<br>Reference ID: MSO Legal, Elizabeth Borges<br>**Fax**: +1-408-765-7723<br>**Email:** Intel-Legal-Notices@intel.com<br><br>**With a copy to:**<br>CT Corporation System<br>330 North Brand Blvd, Ste 700<br>Glendale, CA  91203 |
| 38. | Raytheon Company | **Name of person or position for service and notices**:<br>Matthew I Kaplan, Tucker Ellis LLP<br>**Address**:  515 S Flower St., 42nd Floor<br>Los Angeles, CA 90071<br>Matthew.kaplan@tuckerellis.com<br><br>David Platt, Vice President & Associate General Counsel, EH&S/Real Estate<br>RTX Corporation<br>Office of General Counsel<br>10 Farm Springs Road, Farmington, CT 06032<br>david.platt@rtx.com |

| 39. | Sanmina Corporation | **Name of person or position for service and notices**:<br>Steven R. Tekosky<br>**Address**:  Tatro Tekosky Sadwick LLP, 7083 Hollywood Blvd., 5th Floor, Los Angeles, CA  90028-8908<br>**Phone**: 213-761-2794<br>**Fax**:  213-225-7151<br>**Email**: stekosky@ttsmlaw.com |
|---|---|---|
| 40. | AT&T Corp. | **Name of person or position for service and notices**:<br>Richard M. Parr, Esq., AT&T Services, Inc.<br>**Address:** 4305 Lake Washington Blvd. NE, Ste. 2213<br>**Phone:** 214-695-8443<br>**Fax**: N/A<br>**Email:**  rp3639@att.com<br><br>**With a copy to:**<br>Patricia M. O'Toole, Esq.<br>The O'Toole Law Firm<br>P.O. Box 352348<br>Los Angeles, CA 90035<br>Phone: 213-706-5069<br>Email: otoolelaw@earthlink.net |
| 41. | TE Connectivity Corporation | **Name of person or position for service and notices**: Tammy Hall, Corporate Environmental Director<br>**Address**: PO BOX 3608 MS 140-055, Harrisburg, PA 17105<br>**Phone**:  678-428-6221<br>**Fax**: N/A<br>**Email**: tammy.hall@te.com |
| 42. | Honeywell International Inc. | **Name of person or position for service and notices**:<br>Chuck Anthony<br>General Counsel – Health, Safety, Environment, Product Stewardship and Sustainability<br>Honeywell International Inc.<br>**Address:** 855 S. Mint Street Charlotte, NC 28202<br>**Phone:** 980-279-3070<br>**Email:**<br>Charles.Anthony@Honeywell.com<br><br>Jeremy Karpatkin, Esq. |

E-14

| | | |
|---|---|---|
| | | Arnold & Porter Kaye Scholer LLP 601 Massachusetts Ave., NW Washington, DC 20001-3743 Jeremy.Karpatkin@arnoldporter.com **Phone:** 202-942-5564 **Fax:** 202-942-5999 <br><br> **Service Agent for California:** Corporation Service Company which will do business in California as CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833-3505 |
| 43. | Beazer East, Inc. | **Name of person or position for service and notices**: Charles E. McChesney II, Esq. Chief Legal Counsel Vice President & Secretary **Address**: 600 River Avenue, Suite 200, Pittsburgh PA 15212 **Phone**: 412 208 8839 **Fax**: **Email**: charles.mcchesney@trmi.biz |
| 44. | General Electric Company | **Name of person or position for service and notices**: Andrew J. Thomas **Address**: 1 River Road, Schenectady NY 12345-6000 **Phone**: 267-515-4165: **Email**: andrewJ.thomas@ge.com |
| 45. | Delta Tech Service, Inc. | **Name of person or position for service and notices**: Curt Johnson **Address**: 397 West Channel Road, Benicia CA 94510 **Phone**: (707) 745-2080 **Fax**: (707) 745-2292 **Email**: cjohnson@deltatechservice.com |
| 46. | Northrop Grumman Systems Corp. | **Name of person or position for service and notices**: Northrop Grumman Corporation - Law Department c/o Gwen Nightengale, Senior Counsel - EHS **Address**: 2980 Fairview Park Drive Falls Church, VA 22042-4511 **Phone**: (703) 280-4069 |

| | | |
|---|---|---|
| | | **Fax**: (703) 846-9616<br>**Email**: Gwen.Nightengale@ngc.com |
| 47. | The Boeing Company | **Name of person or position for service and notices**:<br>David Cohen, Senior Counsel<br>**Address**:  The Boeing Company Law Department<br>2201 Seal Beach Boulevard, Seal Beach, CA 90740-1515<br>**Phone**: 562-797-1018<br>**Fax**: 562-797-5535<br>**Email**: David.l.cohen@boeing.com |
| 48. | Evoqua Water Technologies LLC | **Name of person or position for service and notices**: Joseph A. DiMenno, Esq.<br>**Address**: 210 Sixth Avenue, Suite 3300, Pittsburgh, PA 15222<br>**Phone**: (724) 772-1368<br>**Fax**:<br>**Email**: joseph.dimenno@evoqua.com |
| 49. | Broadcom Inc. | **Name of person or position for service and notices**:<br>Mark Brazeal - Chief Legal and Corporate Affairs Officer<br>**Address**: 1320 Ridder Park Drive San Jose, CA 95131<br>**Phone**: 408-857-3100<br>**Fax**:  N/A<br>**Email**:  mark.brazeal@broadcom.com |
| 50. | USS-UPI, LLC | **Name of person or position for service and notices**: Brad Rimmel<br>**Address**: 600 Grant Street, Pittsburgh, PA 15219<br>**Phone**:<br>**Fax**:<br>**Email**: BARimmel@uss.com |
| 51. | Arris Solutions, Inc. (ASI) | **Name of person or position for service and notices**: Andrew Wagner, outside counsel<br>**Address**: Robinson Bradshaw, 1450 Raleigh Road, Suite 100<br>**Phone**: 919 328-8839<br>**Fax**:<br>**Email**: awagner@robinsonbradshaw.com |
| 52. | Thermo Fisher Scientific Inc. | **Name of person or position for service and notices**:<br>Robert H. Fetter |

| | | Vice President, Risk Management Thermo Fisher Scientific Inc. 168 Third Avenue Waltham, MA 02451 **Phone:** (781) 622-1000 **Email:** robert.fetter@thermofisher.com<br><br>Matthew C. Wood, Esq. Outside Counsel Babst Calland Two Gateway Center, 6th Floor Pittsburgh, PA 15222 **Phone:** (412) 394-5400 **Email:** stcalland.com |
|---|---|---|